REED, PLAINTIFF IN ERROR, VS. VAUGHAN, DEFENDANT IN ERROR.

1. A bankrupt certificate cannot be impeached by pleading facts which show that the court, by which the certificate was granted, had no jurisdiction of the application for a discharge. The certificate is conclusive, of *itself*, in favor of a bankrupt, unless impeached for fraud.

2. The courts of the United States, though possessing a limited jurisdiction, by intendment of law, stand upon the same footing, as courts of record of general jurisdiction. In pleading a judgment or decree of one of them, there is no more necessity for showing the facts, which confer jurisdiction, than in a plea of a judgment of the highest tribunal known to the law. Their judgments cannot be impeached for irregularity or error, in a collateral proceeding; they can only be vacated on motion, in the courts in which they are rendered, or reversed, for error, in an appellate jurisdiction.

3. All the presumptions which are indulged in favor of superior tribunals of general jurisdiction, are equally extended to the courts of the United States: It is not necessary, therefore, in pleading a bankrupt certificate, to set out the facts and proceedings necessary to give the court jurisdiction: the certificate, *itself*, is a complete bar to all suits for debts embraced within it, unless impeached for fraud.

## ERROR to St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was an application to the chancery court for an injunction against a judgment at law. The suit was originally begun in the St. Louis circuit court, but was subsequently transferred to the common pleas court. The grounds for the injunction, as set forth in the bill, were, that the petitioner had, on the 2d of March, 1843, made application to the United States district court at Washington City, for the benefit of the bankrupt law, and that on the 3d of July, 1843, a decree was rendered in his favor, and a certificate of discharge duly granted. A certificate of discharge of the circuit court of the United States, for the district of Columbia, was filed and made a part of the bill. The bill further stated, that the judgment, against

which he sought relief, had been included in his schedule, and that his certificate discharged him from payment. On a demurrer to the bill being filed by the defendant, the court below sustained the objections taken to the bill and dissolved the injunction. The case was brought to this court (10 Mo. R., 447) and the judgment of the court below reversed. The case being returned to the common pleas court, the defendant filed his answer, requiring proof of the complainant's having been discharged under the bankrupt act, and that such a discharge was granted; that the same is illegal and void; that the judgment sought to be enforced was not in-cluded in complainant's schedule, and was recovered after the application for the benefit of the bankrupt act; and because said Reed, at the time of said application, did not reside or have his place of business in the district of Columbia; and that he also withheld property and ef-fects of his, existing at the time of his application, from the operation of said bankrupt act, and never surrendered the same, as required by said act. A replication to the answer was filed, and at the hearing of the cause, the complainant offered, subject to defendant's objection, first, the certificate of discharge, filed with the bill, and next, without objection, read in evi-dence a certified transcript of the record of the circuit court of the United States for the dis-triet of Columbia, showing the petition of the complainant; a schedule of his debts, in which is included a debt of Joshua Vaughan, the defendant, of Madison county, Illinois, for $560; his property, effects, notice to creditors by publication, &c., and a final decree of discharge, under the sale of said court, from all his debts.

Defendant then proved, by John M. Krum, that he has known Reed since 1837 or 8—in 1838 he had a saw mill at Chippewa in Madison county, Illinois. He removed thence to Rock Island, and was appointed surveyor general in 1841. He then resided with his family in St. Louis till lately (1848.) Witness also stated, that Vaughan had resided in Madison county, Illinois, for the last fifteen years. In 1842 witness was in Washington city, and found Reed there, and in March 1843 left him there. His wife was somewhere in the east. Witness un-derstood that Reed had an office in St. Louis, and did not know that he had any other place of business, after he came to St. Louis.

F. R. Conway, had known Dr. Reed since he was appointed surveyor general, in 1841: witness succeeded Dr. Reed in the office; the first place he knew his residence, was on Market street, in St. Louis; did not know his family, but they were in St. Louis when he went into the office of surveyor general. The office was kept at St. Louis—that was its place of business; was (witness) surveyor general four years, and the business was done at St. Louis; the business of the office never required him to go to Washington city. The business of that officer is to appoint deputies; let contracts, superintend the making of plats, &c. He was appointed in 1845; never had to go out of the State to attend to the business of his office; never knew of a surveyor general going to Washington, or out of his dictrict to attend to the business of his office. Surveyor generals are sometimes absent from their offices on business, but not out of their districts.

William Wilburn, had known Reed since 1841; his family was in St. Louis before 1843; St. Louis is the place of business of surveyor general for Missouri and Illinois. Witness was sur-veyor general between two and three years before Reed's appointment; he had been clerk in the office since 1818; the duties have always been discharged at the same place; never knew it neces-sary for the surveyor general to be present at Washington on the business of his office; has never known Reed to have his residence or place of business out of St. Louis, since his appointment to that office.

A. Renard, another witness, stated that he had known Reed since 1841; Reed was appointed in 1842, and held it till May, 1845; witness was clerk under him; his family resided in St. Louis, and that was his place of business; knew of no other while Reed held said office; he (Reed) had made several trips to the City of Washington; at one time he remained there 3 or 4 months, but does not know on what business.

To the introduction of all this evidence the plaintiff objected, but his objections were over-ruled; to which he at the time excepted. The court, after due consideration, decided against the reading of the certificate of discharge aforesaid, filed with the bill, to which the plaintiff also excepted and decreed that the bill be dismissed; to which decision of the court, in dismissing the

Reed vs. Vaughan.

plaintiff's bill, complainant excepted, and filed his bill of exceptions, and has brought the case to this court by writ of error.

## A. H. BUCKNER, for plaintiff in error.

1. The evidence introduced by defendant and admitted by the court, and which led to the dismissal of complainant's bill, was not alone and of itself admissible to prove a fraud, within the meaning of the 4th section of the bankrupt act, and thereby nullify the certificate: 5 Story's Laws 444.

2. Fraud is not to be presumed, and something more than evidence, that the bankrupt had his residence different from that stated in his petition, is required to make out a fraudulent intention; but it is not fraud per se.

3. The answer of defendant is not such notice of fraud, growing out of a want of residence in the district, as to let in this evidence, for the purpose of making out a fraud, within the meaning of the 4th section of the bankrupt act.

The evidence was not admissible, for the purpose of showing a want of jurisdiction in the United States court for the district of Columbia. These courts are courts of general jurisdiction, and, by the bankrupt act, had jurisdiction of bankrupts in their districts. A proceeding in bankruptcy is in the nature of a suit of a debtor against his creditors, and must be governed by the same rules, as to its effect and operation, as the judgments and decrees of these courts in other cases. It is conclusive against the creditor, unless impeached for some fraud: 5 Story's Laws 444; 10 Miss. R. 447; 5 Cranch 185; 10 Wheat. R. 192; McCormick vs. Sullivant.

The United States district court had a general jurisdiction of the subject matter of bankruptcy, and having such jurisdiction, its judgments are binding and conclusive upon all the world: 3 Peters 203; 10 Wheat. R. 192; 2 Salk. R. 674; 17 Wend. R. 484; 7 Bacon Ab. 170; 3 Ham. R. 305.

If a record and judgment, which does not show jurisdiction, cannot be impeached in a collateral proceeding and treated as a nullity, for that cause, a fortiori oral evidence cannot be permitted to be introduced to falsify the record: 2 McLean R. 473; 4 Mass. R. 284; 6 Mass R. 328; 4 Miss. R., Lindell vs. Bank.

## TODD, for defendant in error.

I. The certificate of discharge was properly excluded, because of its variance with the allegations of the bill.

II. But the record shows, that the plaintiff in error has no ground of complaint by reason of the court's excluding the certificate of discharge, in the first instance; because, during the trial, the plaintiff in error introduced, without objection or exclusion, the entire record of his proceedings in bankruptcy, including the final decree for his discharge, and the court, in finally making up the decree, considered the certificate of discharge as if properly in, and passed upon its effect under the evidence.

III. The circuit court of the United States for the District of Columbia, had no jurisdiction over the application of Reed therein, for the benefit of the bankrupt act, unless Reed, at the time he filed his petition, resided in said district or had his place of business therein. See section 7 of bankrupt act; 9 Ala. Rep. 795. Reed filed his petition in said court, on the ground that he resided in said district. The answer denied this, among other things, or that he there had his place of business, and by the replication this was put in issue as one of fact, and tried and found by the court trying the issue for the defendant. That this issue was properly made, the following authorities are referred to: 7 J. R. 75; 10 J. R. 161; 1 Cowen 316; 3 Wend. 247; 20 J. R. 208. These decisions were made upon questions arising upon pleas of discharge, under the insolvent acts of New York. The tribunals authorized under said acts, to entertain petitions for their benefit, being decided to be of inferior and limited jurisdiction, it is decided by these cases that a plea of

a discharge, under said acts, must set forth the facts requisite under the acts to give the particu-lar tribunals chosen, jurisdiction in the given cases. Of these facts, one was that the applicant should have been a resident in the county, in which the application was made, for a certain length of time next prior to his application. Now what it is necessary to allege in a plea, to make a defence available, it is competent to deny and traverse, and therefore to require proof of and to disprove; and if not proved, or is disproved, of course, the defence fails. But this court has decided, that the courts authorized to act under the late bankrupt act of the United States, are, in such proceedings, courts of such grade that their jurisdiction, in all cases, is to be presumed: 10 Mo. Rep. 447, Vaughn vs. Reed. As this decision relieved Reed from setting forth the facts requisite for giving the court jurisdiction, in his individual case, which he selected for his appli-cation, the answer, for invalidating his certificate of discharge, denied the existence of those facts requisite for jurisdiction in said court in his case. That such an aswer is good and valid, is shown for these reasons:

1. Section 4 of said bankrupt act entitles a party to a discharge and certificate, only when among other things, the party has fully complied with and obeyed "all the orders and directions which may from time to time be passed by the proper court," not by any court authorized to pro-ceed under said bankrupt act. Now it has been shown by sec. 7 of said act, that the "proper court," in each individual application, is one of those named in the act, within the district in which the applicant at the time resided, or had his place of business. Also, by said section 4, it is only such discharge and certificate as are "duly granted" that shall avail and protect the party receiving the same, from his prior debts: 1 Comstock's N. Y. Rep. 507; and a discharge and cer-tificate cannot be said to be duly granted, when granted by an improper court. Now it is insisted, that the rule always is, that a party, to have the advantage of a legislative enactment, made for his special relief, to the injury of others and in derogation of common rights, and in which he may proceed ex parte, must keep strictly within the provisions of the act, and strictly conform to them. The provisions of said section 4, designating the court in which the petitioner shall file his petition, was a necessary protection to creditors against their debtor's going away to dis-tant places to file their petitions, where, in many cases the proceeding might be begun and con-cluded without the creditors knowing any thing of it, notwithstanding all the notices provided for in the act or the rules of court; and if they did know of it, the expense and trouble of con-testing with a fraudulent debtor, at a great distance, would be most unjustly burdensome. The present case illustrates this. By reference to the schedule of debts, it will be seen, that the great majority of the creditors were at the time, residing in St. Louis and in Illinois near St. Louis; and the rest in Kentucky and Ohio.

2. That it may be shown that a court of general jurisdiction had not jurisdiction in every par-ticular case, the following authorities are referred to: Story's Confl. of Laws 2 edition, pages 507, 508 (first edition, pages 508, 509) secs. 608, 609; 5 Wend. Rep. 148; 6 Barb. Rep. 607; 9 Ala. Rep. 795.

IV. The complainant did not file a motion for a new trial, nor a motion for a re-hearing: there-fore this court ought not to entertain the case, either as to its trial and the verdict found upon the issues made, nor as to the decree rendered on the final hearing of the case: 4 Mo. Rep. pages 456, 503, 504 and following. Although these decisions were upon the Rev. Code of 1835, yet it is insisted, that they are just as applicable to the Rev. Code of 1845. When the replication is filed, the issues are made and the case is for hearing: Rev. Code, 1845, page 844, section 1 art. 3. Whether any issue shall be tried by a jury or not is with the court: ib. page 844, art. 3, secs. 6, 7, 8; However tried, the court can grant a new trial, sec. 9. Whether the issue be tried by a jury or by the court, the motion for a new trial is equally important and necessary for a review of the case by the supreme court: 4 Mo. Rep. 504, 505. Rev. Code, p. 845, art. 3, sec. 15, is the same as Rev. Code, 1835, art. 3, sec. 9, regulating Chy. Practice; and Rev. Code 1845, secs. 32 and 37, touching practice in supreme court, page 906, are the same as secs. 31 and 36 of the Rev. Code of 1835 on the same practice.

Scott, J., delivered the opinion of the court.

This cause involves the force and effect of a certificate in bankruptcy, under the laws of the U. States. The precise question is, whether a certificate, relied on as a defence against the debt due by the bankrupt, the creditor can impeach by pleading facts which show, that the court, by which the certificate was granted, had no jurisdiction of the application for a discharge, even though the facts may appear upon the face of the record which gives the court jurisdiction. The courts of the U. States, though possessing a limited jurisdiction, yet, in the intendment of law, stand upon the same footing as courts of record of general jurisdiction. All the presumptions which are indulged in favor of superior tribunals of general jurisdiction, are equally extended to the courts of the United States. In pleading a judgment or decree of one of those courts, there is no more necessity for showing the facts which confer jurisdiction, than in a plea of judgment of the highest tribunal known to the law. Their judgment cannot be impeached for irregularity or error in a collateral proceeding; they can only be vacated on motion, in the courts in which they are rendered, or reversed for error in an appellate jurisdiction. The bankrupt act makes the proceedings in bankruptcy records. The fourth section of that act prescribes, that the discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, &c., and shall, and may be pleaded as a full and complete bar to all suits brought in any court of jurisdiction whatever, and the same shall be conclusive evidence, of itself, in favor of such bankrupt, unless the same shall be impeached for fraud, or some wilful concealment, by him, of his property, &c. If it is competent for Congress to enact bankrupt laws, the force and effect of a discharge and certificate under the laws, may be declared by such enactment. When the statute declares, that a certificate shall be conclusive, of itself, in favor of a bankrupt, unless impeached for fraud, it is equivalent to saying, that nothing, in impeachment of the certificate, shall be pleaded but fraud. The expression of one cause, for its avoidence, is an exclusion of all others. If the words "duly granted" authorize an enquiry into the facts which give jurisdiction to the court granting the certificate, then the law enacts the solecism, that a writing may be impeached, but if it is not overthrown in the attempt, then it shall be conclusive. This is a strange sort of conclusiveness. What avail is the conclusiveness to the party, if he is only to have the effect of it after an unsuccessful effort to avoid his instrument? But what authority is there in the law for limiting the

enquiry, under the words "duly granted," to the facts on which juris-
diction is founded?   If it authorizes an investigation into one, it equal-
ly authorizes an investigation into all matters in which there may have
been irregularity; so the law, in effect, is repealed, and an instru-
ment which is made conclusive evidence of itself, is only allowed its
effect after it has successfully resisted all efforts to overthrow it.   This
view of the effect of a certificate, is not unsupported by authority.   In
the case of Rowan vs. Holcomb, 16 Ohio Rep. 463, it was held, that it
was not necessary that the certificate should be pleaded, with all the facts
and proceedings necessary to give the court jurisdiction.   That it is a com-
plete bar to all suits for a debt embraced within it, unless impeached
for fraud.   The case in 5 Hill's Reports, is disregarded, and the court
say, "we do not hold the district court of the United States to be a
court of local, limited jurisdiction, in such sense that to give validity to
its orders or decrees, as a plea in bar, that it is necessary in the
plea to allege all the facts and proceedings necessary to confer
jurisdiction.   The district court is a court of record, created under the
powers of the constitution of the United States, having jurisdiction in
matters of bankruptcy by act of Congress.   Matters of bankruptcy, by
the act, are conferred upon the district court, as part of its general jur-
isdiction; and on principle, its orders of final discharge may be plead,
precisely as the judgments and decrees of any court of general juris-
diction."   So, in the case of White vs. How and others, 3 McLean 291,
the objection was, that the plea did not set out the proceedings under
which the bankruptcy was decreed.   It was held that the plea was
good—that it was not necessary to set out more than the certificate and
discharge duly authenticated.   The law makes these evidence, and con-
clusive evidence, unless impeached for fraud.   In the case of Ingalls
vs. Savage, 3 Barr 227, it was determined, that the discharge and cer-
tificate are a complete bar when pleaded, unless avoided for fraud.   The
court says, "the path is thus plainly and distinctly marked for courts,
and it would be useless and unwise to wonder either to the right or to
the left."   The cases in New York have been examined, and they seem
to be founded on principles, not in accordance with the received
law upon this subject.   It would seem to be a rule, established in the
jurisprudence of that State, "that the jurisdiction of a court, whether
of general or limited jurisdiction, may be enquired into, although the
record of the judgment states facts, giving it jurisdiction.   No court
nor officer can acquire jurisdiction by the mere assertion of it, or false-
ly alleging the existence of facts on which the jurisdiction depends."
Harrington vs. People, 6 Barbour 607.   How many of the proposition,

outside of that State, would not be willing to endorse this principle, and as its influence has operated in producing the decisions relied on, those decisions cannot receive the sanction of courts which deny the principles on which they are founded. The case of Sackett vs. Andross, 5 Hill's Rep., which is mostly relied on, is decided without reference to the provisions of the bankrupt law, in relation to the effect of discharges. In the case of Ruckman vs. Cuvell, 1 Comstock 505, the opinion of a single judge is expressed. In Stephens vs. Ely, 6 Hill 607, the opinion of the court is delivered by Nelson, and he kindly refers the pleader to the forms under the insolvent laws before officers in the country, as guides in impeaching the decrees of a court of general jurisdiction. The distinction, taken by the judge, between cases of voluntary and involuntary bankruptcy under the act, it seems is difficult to be maintained. The Congress of the United States had the power to pass the voluntary clause of the bankrupt law. Its authority to do so, has been sustained by the supreme court of the United States. If there is power to pass such a clause, then a power exists to declare the force and effect under it. Now if the law gives the same effect to the certificate, whether obtained under the voluntary or involuntary provisions, and it is admitted to be conclusive and unimpeachable when given under the involuntary clause; on what principle, then, can it be impeached when granted under the voluntary clause? The asserting of such a distinction seems like giving up the controversy.

The point made, as to the manner of serving the execution, cannot be maintained. This was a proceeding in chancery, and the rules established in relation to the preparation of causes for this court, in trials at common law, have never been regarded as applicable to proceedings in chancery.

The conflict of laws in the references, relate to foreign judgments. The other judges concurring herein, the injunction is perpetuated.