# Richmond.

## ALLAN V. HOFFMAN.

### APRIL 14th, 1887.

CHANCERY PRACTICE—*Equitable attachments—Sale of land.*—Equitable attachments were levied on all of P.'s land. At his request, decree to sell his interest in one tract, in exoneration of the rest, was entered. Before sale he died intestate, leaving one heir, G. The suits were never revived in her name. Sale was made and confirmed to H., as guardian. Later H. brought suit to sell all the lands of his ward, in-cluding said interest. G., as heir of an uncle, owned one-ninth of the said tract, and, being a party to H.'s suit, answered, claiming that one-ninth, but not objecting to sale of P.'s interest. In H.'s suit, sale was made of that tract at an advantageous price. Then G. filed her cross-bill in H.'s suit to avoid sale of H.'s interest, because sale was made after his death without revival of suits in her name. Demurrer to cross-bill was overruled.

HELD :

    1. Cross-bill, seeking in collateral proceeding to avoid decrees rendered in another suit by a court of competent jurisdiction, is demurrable.

    2. Sale was made under attachment levied on the land, a proceed-ing *in rem*, and was valid, and bound all claiming under P.

Appeal from decree of circuit court of Goochland county rendered April 6th, 1885, in the suit of Hoffman, guardian, &c., against Allan, &c. The decree was adverse to the de-fendants, Hoffman Allan and Louisa G. Allan, and they obtained an appeal to this court. Opinion states the case.

*W. W. Cosby* and *Geo. W. Mayo*, for the appellants.

*Kean & Guy*, for the appellees. ·

FAUNTLEROY, J., delivered the opinion of the court.

The transcript of the record in the cause discloses the following case : John Allan died many years since, leaving a widow, Mrs. Louisa G. Allan, and three children—John, William G., and Patterson. In the settlement of said John Allan's estate a certain tract of land lying in Goochland county, and known as the "Lower Byrd," was assigned to his widow as part of her dower ; the reversionary interest in the said Lower Byrd tract belonging absolutely to his said three sons, John, William G., and Patterson Allan. During the life-time of the said widow, about 1867, certain creditors of Patterson Allan, then a non-resident, instituted proceedings by foreign attachment in equity in the circuit court of Goochland county against said Patterson Allan, to subject his interest in the Lower Byrd dower land, and also his interest in other lands, to the payment of his debts. The attachments under each of these proceedings were levied by the sheriff of Goochland county upon the whole interest of said Patterson Allan in the Lower Byrd or dower lands, and also in the other lands mentioned. The proceedings in these causes were regular in every respect; the claims of the plaintiffs ascertained, as to their amounts and priorities, and established ; and the interests of Patterson Allan in the Lower Byrd or dower lands, and in the other lands which had been levied upon, were, by decrees entered in the said attachment suits, directed to be sold by the sheriff, who was also directed to apply the proceeds of sale to the costs of said suits, the expenses of sale, and to the payment of the plaintiffs' claims in each of the said attachments.

In 1872 these causes were consolidated under the general style of James M. Taylor against Patterson Allan, and Samuel L. Cottrell against Patterson Allan, and J. W. Cardwell & Co. against Patterson Allan, and E. H. Skinner against Patterson Allan. At this time, Patterson Allan filed his answer or petition, and with it, and as part of it, a paper signed by himself, and marked " Exhibit AA," in which he fully sets forth his interest in the Lower Byrd or dower lands, and prays that his said interest in the said lands be " sold and subjected to the satisfaction of the decrees in said suits " before any sale is attempted of his interests in the other lands levied upon; so as, if possible, to satisfy said decrees without disturbing the interest, which, as aforesaid, he has sold to his said deceased brothers. " Now, therefore, he, the said Patterson Allan, does hereby authorize John H. Guy, the counsel for the plaintiffs in the said suits, to appear in the same for him, the said defendant, likewise, and file any answer necessary to accomplish the wishes of the said defendant herein; and for and in behalf of the said defendant to consent to such modifications of the decrees that have been made in said causes as will tend to carry out the general views expressed in this writing." This proposition or agreement was accepted by the plaintiffs, and a decree in conformity therewith was entered in these said attachment proceedings on the fourth day of September, 1872, and John H. Guy appointed a special commissioner to sell (in substitution of the sheriff) at public auction the interest of said Patterson Allan in the Lower Byrd or dower lands which had been levied upon in the attachment suits. The said John H. Guy, special commissioner, did, by virtue of the said decree, expose said property to sale at public auction, after due advertisement, on the ninth day of May, 1874, at which sale J. Latimer Hoffman, (a non-resident,) guardian of the appellants, then infants, became the purchaser of the said Patterson Allan's one-third reversionary interest in the

said dower lands, called the "Lower Byrd," at the price of $1,710, all of which was paid to said special commissioner in cash.    The said sale was duly reported by the said special commissioner to the circuit court, and was confirmed by the court, and the said special commissioner was directed to pay the net proceeds of the sale to the creditors in the said attachments according to their priorities; the decree appointing him a commissioner for the purpose, and directing him to convey the said property, the Lower Byrd dower lands, so purchased, to the appellants, who were the infant wards of the said purchaser, J. Latimer Hoffman, which the said special commissioner, John H. Guy, did, by deed dated September 18, 1874, and duly recorded in the clerk's office of Goochland county court.    At September term, 1881, of the circuit court of Goochland county, J. Latimer Hoffman, guardian of the appellants, filed a bill for the purpose of selling all the lands in the State of Virginia belonging to his said infant wards, the appellants.

In the said bill the interests of the said Hoffman Allan and Louisa G. Allan, the appellants, in the several tracts and parcels of land mentioned, (and especially the Lower Byrd reversionary interest as belonging wholly to them,) except a one-ninth interest in the reversion of the dower land belonging to said Genevieve Allan as one of the heirs of her uncle, William G. Allan, who had died intestate as to his reversionary interest in the Lower Byrd dower land, were fully set forth and described.    The bill was answered by the defendant Genevieve Allan, then of age, and the only living child and heir of Patterson Allan, deceased, and she only claimed what was set forth in the bill as her interest in the said Lower Byrd dower land, to-wit: a one-ninth interest as heir of her deceased uncle, William G. Allan, aforesaid; and she made no claim to her father's reversionary interest in the said land, which had been sold and conveyed, under the attachments before mentioned, to the

appellants in 1874; and the said Genevieve Allan, in her said answer, said that she saw no objection to the sale prayed for in the bill.

Under proceedings in the cause, the Lower Byrd dower lands, together with other property adjoining it, and owned by the said Hoffman Allan and Louisa G. Allan, infants, were sold together to W. W. Hazzard on the twelfth of May, 1883, and brought a very advantageous price because of their contiguity, and because especially they had then become relieved, by the death of the doweress, of the dower incumbrance, and of a joint or tenancy in common, and this sale was confirmed by the court at the September term, 1883.

A short time after this sale to Hazzard, D. P. Montague and wife (Genevieve Allan), finding that the dower land had sold for more money than it had brought nine years previously at the sale under the proceedings under the foreign attachments, at which the appellants were the purchasers as aforesaid, filed in the suit of *Hoffman, Guardian,* v. *Allan,* a paper denominated their cross-bill, in which they claimed that Patterson Allan died before the sale to the appellants, though after the decree ordering and directing the sale, according to his special instance, consent, and dedication in his paper marked "AA;" and the foreign attachment suits not having been revived formally against her as the heir of Patterson Allan, that the sale and the decree confirming it are void, and that she is therefore entitled to the one-third reversionary interest of her father, Patterson Allan, in the Lower Byrd or dower lands. To this said cross-bill the appellants demurred, which demurrer was overruled by the court, and then the appellants filed their joint and several answer; and thereupon, at the April term, 1885, of the said circuit court, the cause was heard, and the court entered a decree in accordance with the prayer of the cross-bill, and decreeing that

the present purchaser, Hazzard, should not be disturbed in his purchase, but that, it being admitted at the bar that Patterson Allan died soon after the decree of September, 1872, in the attachment suits, and before any sale under that decree, and that Genevieve Allan, his only surviving child and heir at law, nor her husband, not being made parties, the proceedings (according to the authority of the case of *Hudgin* v. *Hudgin*, 6 Gratt. 320) subsequent to the death of Patterson Allan in September, 1872, are void as to them, and the court ordered a reference to a master, with instructions to report an account at the next term in favor of the said D. P. Montague and Genevieve Allan, his wife, according to the said decree, both for the whole proceeds of sale of the one-third interest of Patterson Allan, deceased, in the Lower Byrd dower tract, and for rents and profits of the said lands since the sale to the said guardian of the infant appellants.

The demurrer to the cross-bill should have been sustained, and the bill dismissed, for not being filed in time, nor in the attachment suits, and for want of proper parties, and for want of equity upon its face. The cross-bill seeks, in a collateral proceeding, to make void decrees rendered in another suit by a court of competent jurisdiction. In the case of *Cox* v. *Thomas' Adm'r*, 9 Gratt. 312, Judge Allen says: "If the court has cognizance of the cause, advantage cannot be taken of an erroneous judgment collaterally; for, although the error be apparent, the judgment remains in force until reversed." The same principle is affirmed in *Wilcher* v. *Robertson*, 78 Va. 616; *Grignon* v. *Astor*, 2 How. 338; *Yaple* v. *Titus*, 41 Pa. St. 195; *Jennings* v. *Simpson*, 12 Neb. 558, 11 N. W. Rep. 880; *Holt* v. *Thacher*, 52 Vt. 592.

An enrolled decree can only be altered by a bill of review. 1 Daniel, Ch. Pr. 659. Jurisdiction having attached in the attachment suits, in which the record shows

all proper parties in interest and the subject-matter were before the court, when the decree for sale was rendered in September, 1872, in Patterson Allan's life-time, and in accordance to his prayer in paper "AA," and by the consent and procurement of his counsel, John H. Guy, everything done within the power of that jurisdiction, *when collaterally questioned,* is to be held conclusive of the rights of Patterson Allan, and all privies in blood or estate claiming under him, unless impeached for fraud. 1 Herm. Estop. 380; *Yaple* v. *Titus, supra.* The appellants were purchasers at a judicial sale made in a suit to which they were not parties, for value, and without notice, in which the record showed all the necessary and proper parties, and perfectly regular proceedings; and, as such, they are entitled to the protection of a court of equity against any question or attack upon their title in another suit, and a collateral proceeding. *Crawford* v. *Weller,* 23 Grat. 835, and cases there cited. The attachments under which the appellants became the purchasers of Patterson Allan's one-third reversionary interest in the Lower Byrd dower lands were levied upon the said lands in 1867, and the decree of execution and sale issued in the life-time of Patterson Allan, and the sale was valid, notwithstanding the death of the debtor. Code 1873, ch. 148, § 11.

At common law, when an execution is delivered to the sheriff, he may proceed to levy and sell notwithstanding the death of the debtor. *Trevillian* v. *Guerrant,* 31 Gratt. 525. If a levy upon lands be made during the execution debtor's life-time, a sale may be made after his death. *Wheaton* v. *Sexton,* 4 Wheat. 503; Ror. Jud. Sales, §§ 27, 647; *Satcher* v. *Satcher,* 41 Ala. 26; Freem. Ex'ns, § 37; *Charron* v. *Boswell,* 18 Gratt. 225.

The appellants, being complete purchasers for value without notice under a decree of a court of competent jurisdiction over the subject-matter, with all parties in

interest before it, are not responsible for any error in the subsequent proceedings. *Grignon* v. *Astor, supra; Crawford* v. *Weller, supra.* The purchaser is not bound to look back further than the order of the court. He is not to see whether the court were mistaken in facts of debts and children. *Grignon* v. *Astor, supra.*

The statement of the plaintiffs in the cross-bill is contradictory to their answer to the original bill; and, upon the face of both, they exhibit a thorough knowledge of their father's reversionary interest in the dower land, and his alienation of it and dedication of it to pay his attachment creditors' liens upon it. They do not claim to have been injured by the sale in the attachment suits, nor do they suggest fraud, collusion, inadequacy of price, or any other ground to invalidate the decree of confirmation of the sale to the appellants, except the mere technical irregularity or omission to revive the attachment suits against Genevieve Allan as the heir of Patterson Allan, deceased. But this was not necessary; for the proposition of Patterson Allan made to the court, in his paper filed in the attachment suits marked "AA," in 1872, dedicated his interests in the Lower Byrd dower lands to the payment of his debts due and decreed to be paid to his attachment creditors out of all his lands in exoneration of all his other lands, until and unless these Lower Byrd dower lands should prove insufficient to satisfy them; and that, having been accepted by the plaintiffs in the attachment suits, and confirmed by the decree of the court of September 4, 1872, became a fixed contract and agreement; and the land so directed to be sold by his request and for his benefit must be considered as having been equitably converted into money, and as a trust fund under the control of the court for the purposes to which he had dedicated it; and a revival, if necessary, should have been in the name of the personal representative of Patterson Allan; and such

revival having been made in 1879 on the first suggestion of the death of Patterson Allan, and no proceeding taken against the decree of confirmation of 1874, all further proceedings are barred by the statute of limitations, and the decree directing the appellants, who are innocent purchasers for value and without notice, under a competent decree of a competent court, is erroneous.

"If the jurisdiction was improvidently exercised, or in a manner not warranted by the evidence now presented, it is not to be corrected at the expense of the purchaser, who had a right to rely upon the record of the court as an authority emanating from a competent jurisdiction." *Voorhees* v. *Jackson,* 10 Pet. 478; citing *Thompson* v. *Tolinie,* 2 Pet. 163.

"On the proceeding to sell the real estate of an indebted intestate, there are no adversary parties. The proceeding is *in rem.* * * * The only question of jurisdiction is the power of the court over the thing,—the subject-matter before them,—without regard to the persons who may have an interest in it. All the world are parties. Their action operates on the estate, not on the heirs of the intestate. A purchaser claims, not their title, but one paramount." *Grignon* v. *Astor, supra; Doe* v. *Litherberry,* 4 McLean, 449.

The lien of the attachment in Virginia commences from the time of its levy, (Code 1873, ch. 148, § 12;) and the title of the appellants, as purchasers of the reversionary interest of Patterson Allan in the Lower Byrd dower land at the judicial sale made in the attachment suits, related back to the levy of the attachments on the Lower Byrd dower land, in 1867, and was anterior and superior to that of the heir, who could claim no interest or relation to the property until the death of Patterson Allan, in September, 1872.

In the case of *Coan* v. *Osgood,* 15 Barb. N. Y. R. 588, it is said: "It is equally well settled that a verdict or judg-

ment in a former action upon the same matter directly in question is evidence for or against privies in blood, privies in estate, or privies in law."

In *Adams* v. *Barnes*, 17 Mass. 367, the court states that "a judgment which affects directly the estate and interest in the land, and binds the rights of the parties, is at least as effectual as a release or confirmation by one party to the other. Such an estoppel makes part of the title to the land, and extends to all who claim under either of the parties to it."

"A privy in blood, as, for instance, an heir, is bound by a verdict against the ancestor." 2 Phil. Ev. side page 6, 12–17.

"A privy in estate is any person who must necessarily derive his title to the property in question from a party bound by the judgment, return, etc., subsequently to such judgment, return," etc. *Lovell* v. *Dickinson*, 35 N. H. 16.

The plaintiffs in the cross-bill claim title as privies in blood and estate to Patterson Allan, and stand in his shoes, and can claim no more or other than he could have done were he living, which would be to show such cause as then existed against the confirmation of the sale to the appellants in the attachment suits under which they became purchasers. The record shows that John H. Guy, who was the counsel for the plaintiffs in the attachment suits against Patterson Allan, and who had been chosen and constituted by Patterson Allan, by his petition "AA," filed in the said causes consolidated, as his counsel in said suits, and attorney in fact, with plenary powers to file any answers, or give any consent to any proceedings therein, which he might deem necessary and proper to effect the object and desire expressed in the paper "AA," made the sale strictly in accordance with the decree of September, 1872, reported it to the court as fair and satisfactory in all respects, and took the decree of 1874 confirming the sale to appellants, and

received and disbursed the proceeds of sale towards the satisfaction of the debts of Patterson Allan. The irresistible presumption is that he consented to it as the counsel for and agent of Patterson Allan; and the record shows that he was at that time, and had been for years, the counsel for Genevieve Allan in suits in the same court, in reference to and pursuit of her interest in the reversionary estate of the Lower Byrd dower lands, as the heir at law of her father's brother, William G. Allan, deceased; and that he was the counsel of Genevieve Allan and her husband, D. P. Montague, and filed their answer in the suit of *Hoffman, Guardian,* v. *Allan, etc.,* in which they assert only their claim as heir to the reversionary interest of William G. Allan, her uncle, and concede and consent to the sale of the Lower Byrd dower land, as claimed in the bill, to be the property of the appellants as purchasers of Patterson Allan's interest therein under the foreign attachment proceedings to pay her father's debts.

The presumption is conclusive that Genevieve Allan, as well as her able, experienced and faithful counsel, knew that her father's residuary interest in the Lower Byrd dower lands had been sold under the attachment suits to pay his debts when she filed that answer to the bill in *Hoffman, Guardian,* v. *Allan,* and she is bound by that answer to that bill, and the object of that suit, and is estopped from setting up any further or other claim than to the one-ninth interest set up in her said answer. The record shows that Col. Guy was her counsel in reference to her rights in the Lower Byrd dower land at the very time that the sale of Patterson Allan, her father's, interest in reversion was confirmed by the court; and the presumption is that the omission to revive the attachment proceedings in her name, at the confirmation decree, was because she and he knew that she had no rights and interests in Patterson Allan's reversionary interest in the Lower Byrd

dower tract, which had been dedicated, appropriated, and disposed of by Patterson Allan's own paper "AA," filed by him years before in the attachment suits, accepted by the attachment creditors, decreed upon by the court, and effectuated by sale and distribution of the proceeds. Even if the omission to revive the attachment proceedings at that stage in her name were a formal irregularity, it was such as did not and could not operate any possible injury or wrong to her, and it would be inequitable to permit the plaintiffs in the cross-bill to take advantage of her own *laches,* and while practically asking that the decree of confirmation of sale should stand as to the parties to the attachment proceedings, and claiming the benefit of the decree as far as its execution paid the debts of her father, to ask that it be declared void as to the appellants, strangers to the attachment suits, and innocent and complete purchasers for value, without notice, who had paid the purchase money in full, and obtained the conveyance from the court upon a regular and perfect record, without the least knowledge or ground to suspect any error, irregularity or latent equity as to the title. If Genevieve Montague and her husband, plaintiffs in the cross-bill, ever had any rights as to the reversionary interest of Patterson Allan in the Lower Byrd dower tract, they have slept so long upon them till they have passed into the hands of innocent purchasers, whose possession it would be inequitable and against public policy to disturb.

For the foregoing reasons we are of opinion to reverse the decree complained of, and to order the cross-bill to be dismissed.

DECREE REVERSED.