JOHN SILLS v. G. W. FORD.

(Filed 26 April, 1916.)

1. **Equity—Deeds and Conveyances—Correction—Quantum of Proof—Instructions—Trials—Questions for Jury.**

   Where there is sufficient evidence of mutual mistake of the parties to a deed sought to be corrected in a suit, it is for the jury to decide whether it is clear, strong, and convincing, under a proper charge from the court.

2. **Equity—Deeds and Conveyances—Correction—Mutual Mistake—Draftsman.**

   Equity will correct or reform a deed to lands *inter vivos*, where through mutual mistake, or the mistake of one of the parties induced or accompanied by the fraud of the other, it does not, as written, truly express their agreement; and this principle extends to the mistake of the draftsman in failing to express the terms of the agreement for the parties thereto, in accordance with their instructions.

3. **Same—Evidence—Denial of Mistake—Questions for Jury.**

   Where the evidence is conflicting as to whether a deed, through mutual mistake, or the mistake of the draftsman, failed to express the intention of the parties, as written, a denial of the mistake by one of the parties will not of itself defeat the equity for correcting the instrument, and the issue is for the determination of the jury, under proper instruction from the court as to the degree of proof required.

4. **Equity—Deeds and Conveyances—Correction—Privity—Parties.**

   The equitable relief of correcting a deed for mutual mistake or. fraud will not be afforded one who is not a party to the original transaction, or claiming under or through the parties in privity.

5. **Same—Registration—Statutes.**

   Since the enactment of our registration law, chapter 147, Public Laws 1885, a grantee in a deed to lands acquires title thereto, as against subsequent purchasers for value, from the date of the registration of the

instrument (Revisal, secs. 979, 980); and where the grantor conveys the standing timber on land to A., and thereafter the land itself to B., who had his deed registered before that of A., and the former seeks to have B.'s deed corrected for mutual mistake or the mistake of the draftsman, the registration of the deed to B. makes it the first effective deed, and A., claiming title under his timber deed from the grantor of the land, is, consequently, in privity with B., and acquires, under the statute, the equity to have the deed corrected in his suit for that purpose against B., and the common grantor is not a necessary party. Revisal, sec. 980.

**6. Equity—Deeds and Conveyances—Correction—Laches.**

Where the timber on lands is conveyed to A. for a valuable consideration, and later his grantor conveys the lands to B., and the latter has his conveyance registered first, and A. seeks to have B.'s deed corrected so as to show that by mutual mistake of the parties it included the timber theretofore granted to him, it is held that A.'s right to the enforcement of the equity will not be lost by his failure to have his deed sooner recorded, for if he succeeds in establishing his right it would be unconscionable to permit B. to keep the timber for which he has not paid, and which he knew was not intended to be conveyed to him by the deed.

CIVIL ACTION tried before *Peebles, J.,* and a jury, at August Term, 1915, of FRANKLIN.

The action was brought to restrain the cutting of timber and to recover damages for timber already cut. The defendant claimed the pine timber under a deed executed to him by E. W. Gupton and wife on 19 March, 1913, registered 31 March, 1913, and the oak timber under a deed executed by said Gupton and wife to himself on 27 June, 1913, registered 18 December, 1914, which last deed also extended the time for the cutting and removal of the pine timber to 1 April, 1916.

The plaintiff claimed under a deed from E. W. Gupton and wife, which conveyed the land in fee, without exception or reservation of the timber, to him, dated 15 November, 1913, and recorded 2 December, 1913. It was alleged, however, by the defendant that the true contract between Gupton and wife and the plaintiff Sills was for the sale of the land, excepting and reserving the timber, and that the attorney who drew the deed, by mistake and inadvertence failed to insert a clause excepting and reserving the same in the deed. Both of the timber deeds to defendant had been executed before the deed to Sills, and defendant's sawmill was then on the land, sawing the timber, and so remained until the beginning of this action.

The attorney, who was a witness for defendant, testified that he drew all three deeds, the last deed to Mr. Ford about six months before the deed to John Sills; that he was instructed to draw the deed to John Sills with the reservation of the timber; that both parties were present and both understood the timber had been sold; that he did not then have time to draw the deed, but told them he would draw it as soon as he

could and send it to them; that in drawing the deed afterwards he forgot to insert the clause reserving the timber. His testimony is clear and is direct upon this point.

E. W. Gupton testified that prior to going to the attorney's office he informed John Sills of the sale of both the oak and pine timber to G. W. Ford, and of the extension of time for cutting and removing the pine timber, and that they instructed the attorney in John Sills' presence to "draw the deed in a way that Mr. Ford had bought the timber and also had the extension, and he had bought the oak timber, too."

The plaintiff in his testimony admitted that the attorney asked him if he knew the timber had been sold, and that he told him he did. He further testified: "I bought the land, knowing the timber had been sold. The reason I did not call some one's attention to the fact that the timber reservation was not in the deed was because I did not know it had to be in the deed." This witness stated, though, that he thought reference was made to the deed for the pine timber in which the right to cut the timber was limited to 30 April, 1914, and not to the deed of E. W. Gupton and wife to G. W. Ford, which was executed 27 June, 1913, and conveyed the oak timber and extended the time for cutting the pine timber. He denied that he was present during the conversation with the attorney in the latter's office.

There was other evidence relating to the mistake in the deed of E. W. Gupton and wife to the plaintiff, John Sills, but it is not necessary that it should be stated here.

The following issue was submitted by the defendant and refused by the court on the grounds stated below:

1. Was the clause reserving the timber rights of G. W. Ford under his deed of March and 27 June, 1913, omitted from the deed from E. W. Gupton to John Sills by mistake of the draftsman?

Refused, upon the following grounds:

1. That it was admitted in open court that the land in question was the property of Mrs. E. W. Gupton, and neither she nor her husband were parties to this action.

2. There was no evidence to show that the timber reservation was left out by mutual mistake of Sills and Mr. and Mrs. Gupton.

3. That defendant was guilty of gross negligence in not having his deed recorded. Defendant excepted.

The court then submitted issues to the jury, and the following verdict resulted:

1. Is the plaintiff the owner and entitled to the possession of the land and timber therein described in the complaint? Answer: "Yes."

2. What damage has the plaintiff sustained by the unlawful cutting of timber and trespassing by the defendant as alleged? Answer: "$500."

The court charged the jury to answer the first issue "Yes" if they

believed the evidence, and also instructed them upon the issue as to damages. The following is the full charge of the court upon the first issue:

"In 1885 the Legislature passed an act making a deed operative from its registration as against creditors and purchasers for value, and I believe the deed put in evidence alleges that Sills paid a valuable consideration for that land, and that registration of the deed is binding upon parties and privies, and as Gupton and his wife were parties and Ford is privy, the court charges you that upon that evidence you find the first issue 'Yes.'" Defendant excepted.

There was judgment upon the verdict, and defendant appealed.

*W. M. Person and Ben. T. Holden for plaintiff.*
*W. H. Yarborough for defendant.*

WALKER, J., after stating the case: There was sufficient proof of the mistake for the consideration of the jury. *King v. Hobbs,* 139 N. C., 170. Whether it was clear, strong, and convincing, being a question for them to decide, and not for the court. *Lehew v. Hewett,* 139 N. C., 6; *King v. Hobbs, supra; Glenn v. Glenn,* 169 N. C., 727. Whether the defendant G. W. Ford would have an equity to correct the deed from E. W. Gupton and wife to John Sills under the law as it was before the enactment of our present registration laws we need not decide, as we base his right to relief, as will hereafter appear, solely upon the legal effect of those laws which give the deed later in date, though earlier in registration, seniority and preference, as will appear hereafter. If the deed to John Sills is allowed to remain as it is, without any correction, the registration of the deed to him, before the date of recording the second or extension deed to the defendant G. W. Ford, will give John Sills the priority of right and title under Laws 1885, ch. 147 (Revisal, secs. 979, 980), provided he is a "purchaser for a valuable consideration" from his bargainors, E. W. Gupton and wife; and as to this no question seems to have been raised, it being tacitly understood, so far as appears, that he paid fair value for the land. Equity will correct or reform a written contract or other instrument *inter vivos,* where through mutual mistake or the mistake of one of the parties induced or accompanied by the fraud of the other it does not, as written, truly express their agreement. "The remedy of reformation is obviously one which is necessary to the complete and exact administration of justice, and which, moreover, can be obtained by equitable procedure alone. A court of law may construe and enforce an instrument as it stands, or may refuse, upon proper cause shown, to give any effect to it, or may treat it as a nullity. But it is plain that if the instrument has not been drawn so as to express the true intention of the parties, to enforce it in its exist-

ing condition would be simply to carry out the very mistake or fraud complained of; while to set it aside altogether might deprive the plaintiff of the advantages of a contract to which he is lawfully entitled. It is obvious, therefore, that the only true measure of justice in such a case is the equitable remedy by reformation (or correction, as it is sometimes called), by means of which the instrument is made to conform to the intention of the parties, and is then enforced in its corrected shape. It need scarcely be added (parenthetically) that while equity has and exercises in proper cases the power to reform, it has no power to make a new contract. A court of chancery cannot (for example) change an agreement between A. and B. into one between A. and C." Bispham's Pr. of Equity, sec. 468. And again: "The general principles by which the court is guided in such cases are well settled. A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently, in the minds of all parties, down to the time of its execution; and, also, must be able to show exactly and precisely the form to which the deed ought to be brought. To reform a contract, and then enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual. Where the mistake has been made on one side only, the utmost that the party desiring relief can obtain is rescission, not reformation. The case is, of course, different if any element of fraud exists; for it has been properly held that where there is a mistake on one side, and fraud on the other, there is a case for reformation." Bispham's Pr. of Eq., sec. 469. This equity also extends to the inadvertence or mistake of the scrivener or draftsman who writes the agreement. If he fails to express the terms as they were agreed upon, the instrument will be so corrected as to be brought into harmony with them. In *King v. Hobbs,* 139 N. C., 172, it was said in regard to a mistake committed in reducing to writing an oral agreement by a justice of the peace selected by the parties for that purpose: "The plaintiff and the defendant then went to a justice of the peace to have their contract put in writing, and the justice evidently by inadvertence or mistake (whether of himself or the parties makes no difference) omitted a material stipulation. In such case all the authorities are agreed that the instrument will be reformed so as to express the true intent and meaning of the parties. This is not an instance of an essential mistake or misunderstanding in the agreement itself, nor where the written instrument is supposed to embody the first and only contract of the parties, but is a case of an error of

47—171

expression where the parties have come to a definite agreement before-hand, and in the endeavor to put this agreement in writing a mistake is made, so that the instrument as drawn does not, in some material point, express the contract it was intended to evidence. In 20 A. and E. Enc. (2 Ed.), 823, it is said: 'That in mistakes of this kind the only inquiry is, Does the instrument contain what the parties intended that it should, and understood that it did? Is it their agreement? And it is wholly immaterial whether the defect is a statutory or common-law requisite, or whether the parties failed to make the instrument in the form they intended, or misapprehended its legal effect.' The authorities are numerous and fully bear out this statement of the doctrine. *Stamper v. Hawkins,* 41 N. C., 7; *Warehouse Co. v. Ozment,* 132 N. C., 839; *Rogers v. Atkinson,* 1 Ga., 12; *Stines v. Hayes,* 36 N. J. Eq., 364; *Leitensdorfer v. Delphy,* 15 Mo., 137. In this last case it is held that 'Equity will correct a mistake, either as to fact or law, made by a drafts-man of a conveyance or other instrument which does not fulfill or which violates the manifest intention of the parties to the agreement.'" And the denial of one of the parties that there was any mistake will not defeat the equity, but it depends altogether upon the finding of the jury from the pertinent evidence, which is of a clear, satisfactory, and con-vincing character, that a mistake was made in expressing the real agree-ment.

It was held in *Stines v. Hayes, supra:* "Nor will the fact that the defendant denies that there is a mistake, and testifies that the deed was drawn according to the intention of the parties, prevent the court from granting the relief if it is satisfied that the deed is not in accordance with the agreement, but ought to be so. And it has been held that the courts will correct an error of this kind when the complainant himself drew the paper. *Cassady v. Metcalf,* 66 Mo., 519."

But there is qualification of this rule in equity as to the correction of deeds and other instruments. The authorities are uniform in holding that the relief by reformation of a written instrument will be granted to the original parties thereto, and to those claiming *under* or *through* them *in privity.* Eaton on Equity, p. 621; 24 A. and E. Enc. (2 Ed.), p. 655, and note 87, and *Adams v. Baker,* 24 Mo., 162, in which case it was held: "In all cases of mistake in written instruments courts of equity will interfere only as between the original parties, or those claim-ing under them in privity, such as personal representatives, heirs, dev-isees, legatees, assignees, voluntary grantees, or judgment creditors, or purchasers from them, with notice of the facts. Story's Equity Juris-prudence, sec. 165. Appellant belongs to neither of the above classes of persons in this case."

The defendant G. W. Ford was not a party to the contract or deed between E. W. Gupton and wife and the plaintiff John Sills, nor is he

a privy thereto. He does not claim *under* Sills nor under the Guptons by any deed subsequent to their deed to Sills. "A privy in estate is a successor to the same estate, and not to a different estate in the same property." *Pool v. Morris,* 29 Ga., 374 (74 Am. Dec., 68). The cases of *Dickinson v. Lovell,* 35 N. H., 9, and *Hunt v. Haven,* 52 N. H., 162, affirming the same, are cited by the authorities as stating the correct principle in regard to privity. It is there said in regard to one who is a privy: "He is any person who must necessarily derive his title to the property in question from a party bound by the judgment, return, etc., *subsequently* to such judgment, return, etc." See, also, *Coleman v. Davis,* 36 S. W., 103; *Allan v. Hoffman,* 83 Va., 129. It is said in the last case, referring to *Dickinson v. Lovell, supra,* and treating the doctrine as extending to judgments operating as conveyances of the land: "In *Adams v. Barnes,* 17 Mass., 367, the Court states that 'A judgment which affects directly the estate and interest in the land, and binds the rights of the parties, is at least as effectual as a release or confirmation by one party to the other. Such an estoppel makes part of the title to the land and extends to all who claim under either of the parties to it.' 'A privy in blood, as, for instance, an heir, is bound by a verdict against the ancestor.' 2 Phil. Ev., side pages 6, 12-17. 'A privy in estate is any person who must necessarily derive his title to the property in question from a party bound by the judgment, return, etc., subsequently to such judgment, return,' etc. *Lovell v. Dickinson,* 35 N. H., 16." The rule is the same, in this respect, as to judgments and deeds. One claiming to stand in privity to a judgment must derive his title under a party bound thereby, and so one who asserts privity with respect to a deed must derive his title under the party to the deed and subsequently to its execution. It is said in *Patton v. Pitts,* 80 Ala., 373, 375: "To constitute one person a privy in estate to another, such other must be a *predecessor* in respect to the property in question, from whom the privy derives his right or title—a mutual or successive relationship," citing Greenleaf on Ev., sec. 189; *Hunt v. Haven, supra.* "Privity in estate denotes mutual or successive relationship to the same rights of property." *Mygatt v. Coe,* 124 N. Y., at 219. He who is in privity stands in the shoes or sits in the seat of the owner *from* whom he derives his title, and thus takes it charged with the burden attending it. Privity exists between two successive holders where the latter takes under the earlier of them, as by descent (for instance, a widow under her husband, or a child under its parent), or by will or grant, or by a voluntary transfer of possession, and privity exists because of the relationship between the parties, or because of the *derivative* character of their title. *Boughton v. Hardee,* 46 N. Y. App. Div., 352 (61 N. Y. Suppl., 574): *Sherrin v. Brochett,* 36 Minn., 154; *Hummell v C. C. F. Natl. Bank.* 32 Pac., 72, 76; 32 Cyc., 392, and note 64; *Orthevin v. Thomas,* 127 Ill., 554.

In the case last cited it is said that "A privy in blood or estate is one who derives his title to the property by descent or purchase." Bigelow on Estoppel (6 Ed.), 347; *Stacy v. Thrasher,* 6 How. (U. S.), 44-59. "There is a certain privity between the grantor and grantee of land. It is not the privity arising upon tenure, for there is no fiction of fealty annexed. It is, however, the same sort of privity which enables the grantee of a purchaser to maintain an action upon the covenants of title given to his vendor." *Mygatt v. Coe, supra.*

This being the nature of privity, does it exist in this case? We are of the opinion that our registration laws supply the necessary privity, or, more properly speaking, that kind of mutual and successsive relation-ship which is essential as a condition to the equitable right of reforma-tion. As between two grantees, the one who first registered his deed, though the later in date of execution, obtains the title, provided he is a purchaser for value. Pub. Laws 1885, ch. 147; Revisal, sec. 980. The deed to the defendant G. W. Ford, from the common grantors, E. W. Gupton and wife, while good and effective as between them, was not valid to pass any property to him, as between him and the plaintiff John Sills, a subsequent purchaser, except from the date of its registra-tion; and as Sills caused his deed from the Guptons to be registered some time before the deed to Ford was recorded, as provided by the statute, the deed to Sills took effect before the deed to Ford. The title of the Guptons passed by their deeds in the following order: first to John Sills and then to G. W. Ford, the same as if the two deeds had been executed on the dates respectively of their registration. This being so, there is such a mutual and successive relationship between the two parties, John Sills and G. W. Ford, as will enable the latter to avail himself of the equitable remedy of correction and have the deed to John Sills so re-formed as to eliminate the mistake in the description and effectuate fully the intention of the parties to it. Under this construction of the statute G. W. Ford claims in privity with John Sills to the same extent and with the same legal effect as if the deeds to the two from the Guptons had been executed in the order above mentioned, and the grantees had promptly registered their deeds so as to preserve the same order of priority. In this view, based upon the purpose and operation of our registration laws, the dates of the respective deeds are unimportant and even immaterial, as the effectiveness of the two deeds from the same grantor ·to pass the title depends not upon their dates, but upon the order of their registration. Before chapter 147, Public Laws 1885, were passed, the law was different, and when a deed was registered its operation related back to the date of its execution. This view as to the effect of the statute is fully sustained by the authorities. In *Collins v. Davis,* 132 N. C., 106, 109, the opinion of the Court was delivered by

*Justice Connor,* the author of the statute (Laws 1885, ch. 147), and it is there said that, like deeds of trust and mortgages under the former law, deeds under the new law "can take effect only from and after registration, just as if they had been executed then and there," referring to and approving what had been decided under the former law (The Code, sec. 1254), with regard to deeds of trust and mortgages, in *Robinson v. Willoughby,* 70 N. C., 358, and in *Hooker v. Nichols,* 116 N. C., 157, where the Court adopted the same construction in regard to deeds, under Laws 1885, ch. 147, that had theretofore applied to mortgages and deeds of trust. See, also, *Austin v. Staten,* 126 N. C., 783. The other cases are collected in the note to Pell's Revisal, sec. 980, at p. 524. It will be seen, therefore, that as between two conflicting deeds from the same grantor, they take effect only from the dates of registration, and in the same order of succession as if they also had been the dates of their execution. The doctrine of privity, or mutual and successive relationship, debarred G. W. Ford under our former registration laws, as deeds then took effect, when registered, by relation to the dates of their execution; but as this has now been changed and registration fixes the date when the deeds take effect, and as by this rule the deed to John Sills comes first, if he was a purchaser for value, and takes precedence over that to George W. Ford, it must follow, by force of the maxim, "Where there is the same reason, there is the same law," that there is sufficient privity or mutual and successive relationship between Ford and Sills to warrant the court in granting relief by reformation of the deed from the Guptons to John Sills.

All that we have said in regard to the registration of conflicting deeds from a common grantor must be understood to apply only to cases where the second grantee has purchased for value and registered his deed first, for these are essential to his right of preference. The first deed in order of execution, if registered first, will, of course, take precedence without regard to the consideration.

The argument may be reduced to this simple statement: that as John Sills has, by registration, procured the first effective deed, the defendant by his conveyance from the Guptons will be considered as having acquired their right to correct the mistake in it, and, therefore, to be in privity with Sills, both being grantees of a common grantor. 34 Cyc., 971. Having come to this conclusion, the case is brought within the principle stated and applied in *King v. Hobbs,* 139 N. C., 170, and *Moore v. Moore,* 151 N. C., 555.

We do not think the defendant G. W. Ford has been guilty of such negligence or laches as should deprive him of the right to have the Sills deed corrected, if there was such a mutual mistake in its description of the thing intended to be conveyed thereby as he alleges. It might open the door wide to the commission of fraud if we should so hold.

If there was no mistake, the plaintiff acquired the better title by his diligence in having his deed promptly registered, and the defendant must bear the loss due to his tardiness; but not so if there was a mutual mistake and plaintiff's deed includes land, or any interest therein, which he did not buy, and, of course, has not paid for, as it would be unconscionable to retain it and refuse to do equity, or to keep it with the knowledge that it does not fairly belong to him. The registration law was intended to prevent fraud or dishonesty, and not to encourage or *promote it*. *Austin v. Staten, supra.* The actual rights of the respective parties will depend, of course, upon what the jury find in regard to the mistake. It is conceded, we believe, that John Sills is a purchaser for value.

There was error in the ruling of the court. The verdict and judgment will be set aside and a new trial ordered.

New trial.