### J. D. ATWELL v. J. B. WATKINS.

#### Delivered May 30, 1896.

**1.   Evidence to Discredit Witness—Limited by Charge—Hearsay.**
Plaintiff claimed title under a deed to himself which disclosed that part of the consideration was paid in cash, and the remainder by his brother's note.   Defendant claimed through and under a deed of trust from the brother, given to secure a loan to him, and made on his sworn application reciting that he was owner of the land.   The brother testified on the trial that plaintiff was the owner, and the issue was whether plaintiff, as grantee of the land for which his brother paid the consideration, was merely a trustee of the naked legal title,   Held, that evidence of the application for the loan was hearsay as to plaintiff, and its admission was error, without a charge restricting its effect to discrediting the brother's testimony in the case.

**2.   Trespass to Try Title—Evidence of Title.**
Where defendant claims title to the land as purchaser at a sale under a trust deed, such deed of trust, the deed made by the trustee after the sale, and a judgment in favor of the purchaser, based thereon, by which he recovered possession of the premises from the grantor in the trust deed, are admissible in evidence, although such grantor was not connected with the written record title, defendant alleging the real and equitable title to be in him.

**3.   Purchase of Land—Deed to Another—Presumption.**
Where one brother purchases and pays for land, no presumption arises from the fact of his having the deed made to another brother that he intended it as a gift, the relationship between the parties not being such as to authorize it.

**4.   Same—Resulting Trust—Presumptions From Recitals.**
When the recital in a deed of a payment of the purchase money does not show by

whom it was made, the presumption is that it was paid by the grantee; but where the deed recites payment by another than the grantee, the burden is on the grantee to show that he acquired by the deed the equitable as well as the legal title.

5. **Same—Evidence Insufficient to Overcome Presumption.**
Where a deed recited that the consideration was partly cash and in part the note of another than the grantee, the fact that the cash was handed to the grantor by such other, the maker of the note, does not overcome the presumption arising from the deed, that it was paid by the grantee, where the evidence shows that the money belonged to him, and that such other person in paying it acted only as his agent.

6. **Resulting Trust—Fraud—Notice.**
Where defendant was induced by fraud to furnish money to another, which was used by the latter in payment of part of the price of land, title to which was taken in the name of a third person, defendant is not entitled to a proportionate interest in the land, on the theory of resulting trust, regardless of whether such third person, the holder of the title, was chargeable with knowledge of the fraud or whether he had compensated the borrower for the money paid out for him by the latter.

APPEAL from Kaufman.    Tried below before Hon. J. E. DILLARD.

*Huffmaster & Huffmaster*, for appellant.—1.   The application for a loan made by J. B. Atwell to the J. B. Watkins Land Mortgage Co., the trust deed upon the land in controversy executed by J. B. Atwell to M. J. Dart, trustee, for benefit of defendant, the deed executed by M. J. Dart, as trustee, to defendant and the judgment of the United States Court in a suit between J. B. Watkins as plaintiff and J. B. Atwell as defendant regarding the title to this land, could not, under repeated rulings of this court, be used in this case against plaintiff; all of said records and the recitals therein contained being nothing more than hearsay so far as this plaintiff is concerned, he not being a party thereto. Overand v. Menczer, 83 Texas, 122, 127; Giddings v. Baker, 80 Texas, 309.

2.   It being shown by the deed read in evidence by defendant, that the legal title to the land in controversy was in the plaintiff, J. D. Atwell, and such also being admitted by defendant in open court, there could be no foreclosure had upon the land by any kind of proceeding to which plaintiff was not a party.   2 Buckler's Digest, secs. 290, 400; Jolly v. Stallings, 78 Texas, 605; Preston v. Breedlove, 45 Texas, 47, 51; Carter v. Attoway, 46 Texas, 108, 110; Pittman v. Henry, 50 Texas, 357, 368.

3.   If one person advances to another a sum of money by way of a loan to assist him in the purchase of land, such person so loaning such money will not have any resulting trust in the land so purchased.  Smith v. Strahan, 16 Texas, 314, 324; Baylor v. Hopf, 81 Texas, 642.

4.   There could be no trust in the land resulting to J. B. Atwell contray to the intention of all the parties at the time the land was purchased, and the deed executed, and the evidence in this case rebuts and repudiates any such theory.   Smith v. Strahan, 16 Texas, 324; Baylor v. Hopf, 81 Texas, 642; Burns v. Bass, 71 Texas, 519.

*W. L. Williams*, for appellee.—1.   When one party pays the purchase money for a tract of land, and the deed is made to another, a

trust results in favor of the party paying the purchase price of the land, and the real title vests in him who pays the consideration, while the grantee in the deed is simply a trustee, and holds the legal title in trust for the real owner. 71 Texas, 516; 5 Texas, 23; 2 Texas, 139; 9 Texas, 482; 20 Texas, 337; 50 Texas, 142; 57 Texas, 16, 609; 51 Am. Dec., 752, 753; 51 Am. Dec., 690; 17 Wallace, lawyers' edition, book 21, p. 570; 37 U. S., lawyers' edition, book 9, p. 1070.

NEILL, ASSOCIATE JUSTICE.—The appellant, J. D. Atwell, plaintiff below, on the 26th of November, 1893, sued the appellee, J. B. Watkins, in the trespass to try title to recover possession of 120 acres of the J. H. Price survey, particularly described in his petition; and, the appellant having on September 2, 1893, instituted in the same court, against the same party, the same kind of suit to recover 261 acres, a part of the Levi Pruett survey, described by metes and bounds, the pleadings being the same in both suits, they were, upon agreement of both parties, by an order of the court, consolidated and tried as one suit.

Appellee, defendant below, plead in answer, specially: First, a plea of purchase in good faith in which he alleged that, on February 1, 1889, J. B. Atwell, an elder brother of appellant, borrowed $400 from him, and executed to him a deed of trust to secure its payment; that in order to procure said loan, J. B. Atwell furnished appellee an application in writing, sworn to by him, in which he stated the lands in controversy belonged to him; and also presented to appellee's agents, who were acting for him, an abstract of title made from the records of Kaufman County, and an unrecorded deed showing the title in the premises to be in him, the said J. B. Atwell; that said deed of trust was duly recorded on the 25th day of the same month; that on December 8, 1891, the said J. B. Atwell, having defaulted in the payment of the indebtedness, the land was sold under the power conferred upon the trustee in the trust deed, and the appellee became the purchaser thereof in good faith, for value, without knowledge, actual or constructive, of appellant's claim; that appellant then resided in Kaufman County, and had full knowledge of the loan and deed of trust, and that appellant combined with his brother, J. B., for the purpose of defrauding appellee, allowing his brother to occupy, rent and control said lands in his own name, withholding his deeds from record and setting up no claim to the property.

Second. A plea in estoppel in which he alleged that appellant allowed his brother, J. B. Atwell, to hold and occupy the lands in controversy, and to keep and control his deed, if he had any; that he knew his brother had procured the loan; that he acquiesced in all that J. B. was doing, and consented to his fraudulent acts; that said acts induced and influenced appellee to advance money on said land; that appellee, relying upon the showing made by J. B. Atwell, and the records of Kaufman County, made said loan and purchase, without knowledge of appellant's claim; that appellant having full knowledge of the fraudu-

lent intent of J. B. Atwell to cheat and defraud appellee, and fraudulently acting with him, by acquiescing in and consenting to said acts and concealing the same from appellee, and silently standing by, knowing said intent, became a party to said fraud, and should be estopped from setting up title in himself.

Third. A cross-bill, in which he alleged: that the purchase of the lands in controversy was made by J. B. Atwell from the Heffingtons on December 8, 1886, and that appellant and appellee claim title through them as a common source; that if appellant has any title, he acquired it through the management of J. B. Atwell, without his knowledge or consent, and totally without consideration from him; that J. B. Atwell made the purchase, paid the cash consideration and gave his note for the deferred payment, which he subsequently paid out of money borrowed from appellee; that by reason of said purchase and payment of the consideration, J. B. Atwell was the real owner and held an equity superior to appellee's naked legal title; that appellant was a naked trustee only; that J. B. Atwell took possession of said lands, held, occupied and used the same as his own, rendered them for taxes in his own name from the date of the purchase in 1886 till he was dispossessed by a decree of the Circuit Court of the United States, on February 28, 1893; that appellee is the owner of all the right, title and interest that J. B. Atwell had when said deed of trust was made. Wherefore he prayed that the legal title be divested from appellant and vested in him.

For the purposes of the trial, appellee filed his written admission "that plaintiff (appellant) has a good cause of action as set forth in his petition except so far as it may be denied in whole or in part by the facts in the answer constituting a good defense, which may be established on the trial."

The cause was tried before a jury and a verdict returned and judgment rendered thereon in favor of appellee.

Upon the trial of the cause the appellee offered in evidence an application for a loan made by J. B. Atwell to the J. B. Watkins Land Mortgage Co., in which he represented the land in controversy to belong to him, and to be of the value of $5715, exclusive of improvements, etc.; to which appellant objected upon the grounds that he was not a party to such application; that he was a minor at the time the application was made; had no knowledge thereof and was in no manner connected therewith, and that it was irrelevant and would tend to prejudice his case in the minds of the jury. These objections were overruled, and the application was read as evidence to the jury.

In explanation of the bill of exceptions reserved by the appellant to this action of the court, the trial judge states that: "The defendant had set up in his answer an estoppel, and this evidence was allowed in support of said plea, to show the manner in which J. B. Atwell was dealing with said property, and the inception of defendant's title, and also to impeach J. B. Atwell as a witness." Had a predicate been laid for the introduction of this application by showing it was made with the

knowledge of the appellant, for the purpose of deceiving appellee's agents and inducing them to believe the property described therein belonged to the applicant and thereby enable him, by such deception, to procure a loan of appellee's money upon such land as security upon the faith that it belonged to J. B. Atwell, the application would have been admissible as evidence tending to prove appellee's plea of estoppel. But no such predicate was laid, nor was there any evidence introduced at any stage of the trial from which the inference could be legitimately drawn that appellant had any knowledge whatsoever of the fact that his brother had made such statement, or that he had applied, or even had ever contemplated applying, to the appellee or his agent to borrow money upon the land in controversy as security. The trial court recognized the total failure of appellee's proof on his plea of estoppel by its failure to submit such issue to the jury. Except as evidence on the plea of estoppel and purchaser in good faith, the "inception" of appellee's title was unimportant, and as there was no evidence tending to establish either, the application of J. B. Atwell was irrelevant, and should not have been allowed to go to the jury as evidence. It can readily be seen that the application and representations made in connection with it, were such as would be calculated to prejudice the jury against the appellant's case when considered in connection with his relationship to J. B. Atwell, and the evidence bearing upon the issue on which the case was tried. When we look to the only issue submitted, and the only one on which appellee adduced any evidence, the statement made by J. B. Atwell in the application cannot but be regarded as hearsay of the most dangerous character. The error in admitting it is not obviated by showing that it contained the sworn statement of J. B. Atwell, directly contrary to what he swore upon the stand as a witness, when the record shows that the jury were not restricted in their consideration of it to evidence as only intended to discredit the witness. It is advanced as evidence by appellee's counsel in their brief to show that J. B. Atwell was the real owner of the land and the appellee merely a naked trustee; and, before us, it is argued that "J. B. had either sworn falsely when he applied for the loan, or his testimony before the jury was false", and such, after the application was admitted as evidence, must have been the argument to the jury. The appellant is not responsible for and should not be prejudiced by what his brother swore in the application, for he was not present when the affidavit was made and was ignorant of it, and it should not have been admitted as evidence from which to argue that his brother was the owner of the land when he made such application.

The only ground of defense upon which there was any evidence tending to defeat the appellant's admitted cause of action, was the third, or cross-bill, set out in our statement of the case, and this was the only one submitted to the jury. Where property is purchased and the conveyance of the legal title is taken in the name of one person, while the purchase price is paid by another, a trust results in favor of the party

who pays the price, and the holder of the legal title becomes a trustee for him. In order to produce this effect, it is indispensable that the payment should be actually made by the beneficiary, or that an absolute obligation to pay should be incurred by him, as a part of the original transaction of purchase, at or before the time of conveyance; no subsequent and entirely independent contract, intervention or payment on his part would raise any resulting trust. A trust results in favor of one who pays part of the price. So, when two or more persons together advance the price, and take title in the name of one of them, a trust will result in favor of the other with respect to an undivided share of the property proportioned to his share of the price. 2 Pom. Eq. (2 ed.), secs. 1037, 1038. When a deed recites that the payment was made by the grantee therein, the real fact may always be established by parol evidence; and it may be shown by such evidence that the purchase price was wholly or partly paid by another person, and thus a trust may be shown to result in his favor. When the trust does not appear in the face of the deed, the burden is upon him who asserts it against the vendee named therein, to establish by a preponderance of evidence the facts from which the trust results. As the whole doctrine of a resulting trust depends upon an equitable presumption of an intention, this presumption may be overcome by parol evidence of an actual intention on the part of the one paying the price that the transaction was to be a gift. 2 Pom. Eq., sec. 1040.

In the light of these principles we will examine the questions presented by the assignments of error made to the action of the court upon the trial of the only issue made by the evidence in the case—which is, whether J. B. Atwell was the equitable owner of the land or any part thereof when he gave the deed of trust to secure the money loaned him, and endeavor to apply the principles to and determine the questions by them.

The deed under which appellant claims the land in controversy was made to him by John, Henry and Mattie Heffington on December 8, 1886, was duly acknowledged by the grantors on the same day, and recorded January 2, 1893. It recites a consideration of $500 cash, but does not state by whom paid, and the further consideration of a promissory note for $612.50, executed by J. B. Atwell. The purchase of the land was effected through Nestor Morrow, the agent of the Heffingtons, who testified upon the trial, that in December, 1886, J. B. Atwell came to him and purchased the land upon the terms recited in the deed; that he wrote the deed and sent it to the vendors to sign and acknowledge; that when the deed was returned him properly signed and acknowledged, he delivered it to J. B. Atwell, and that Muckleroy & Martin took up the $602.50 note by advancing the cash upon it and the money was sent the vendors. That he furnished Muckleroy & Martin an abstract of title to the land, showing the title to be in J. D. Atwell, before they advanced the money on the note, and that it was his understanding at the time the trade for the land was made that the $500 paid

in cash belonged to the appellant, J. D. Atwell, and the land was to be his, but as he was a young boy, witness said that someone else would have to sign the note, who was not a minor, whereupon it was signed by J. B. Atwell, who was making the trade.

The substance of the appellant's, J. D. Atwell's, testimony on this issue is: That he was born February 12, 1872; that his father died in 1882, leaving a place occupied by his family as a homestead and used as a family residence; he also left some stock, consisting of horses and cattle and several hundred head of sheep; that the personal property mentioned was sold and the money received therefor divided among the children; that with the money received in this way, together with what he had saved from the proceeds of crops which he made on the farm, he had accumulated and owned in his own right the sum of $500 in cash; that desiring to purchase some land which was for sale near him, but learning that the Heffington land was in the hands of Mr. Morrow for sale, and could be bought cheaper than the other, and concluding to buy it, he got his brother, J. B. Atwell, to make the purchase for him, and, to that end, turned over to his brother the $500 in cash, and his brother brought back to him a deed dated December 8, 1886, for the land, from the Heffingtons to himself; that he took the deed and read it; showed it to the family and then placed it with the other deeds to the homestead; and that he arranged to satisfy his brother for the note he had signed in part payment for the land by letting him have two horses and the land purchased, free of rent for three years, and that in this way J. B. took charge of the land and used it for that period.

The testimony of J. B. Atwell fully corroborates that of appellant and Morrow.

It was shown by the tax rolls that J. D. Atwell rendered the land for taxes, as well as the Atwell homestead, in his own name up to and until the year 1892; but he and appellant testified that when the time came to pay the taxes each furnished his part of the necessary amount.

We have thus stated substantially all the evidence on the issue of a resulting trust which is asserted to defeat appellant's legal title.

On the theory of the existence of such trust, constituting J. B. Atwell the equitable owner of either the whole or a part of the land in controversy, it was incumbent upon the appellee to show that he had acquired such equitable estate, and, as he claimed it through a sale under the power conferred in the deed of trust from J. B. Atwell to M. J. Dart as trustee, such deed of trust and the deed made by the trustee to appellee in pursuance of the power, and the judgment based thereon by which appellee recovered possession of the land from J. B., were admissible in evidence for the purpose of showing, if J. B. ever had such equity, that appellee had acquired it and was holding possession thereunder, and the court did not err in so holding.

If the land was purchased and paid for with money belonging to J. B. Atwell, no presumption could arise from the fact of his having the deed made to the appellee that he intended it as a gift, the relationship

between the parties not being such as to authorize it. Baylor v. Hopf, 81 Texas, 642. And upon the authority of the case just cited, as well as upon principle, the recital in the deed that J. B. had obligated himself alone by his promissory note to pay over one-half of the purchase money, an equitable interest in the premises to the extent of such obligation would be presumed, and the burden would rest upon the appellant to rebut such presumption by establishing by a preponderance of testimony that it was the real intention in the transaction to vest the equitable as well as the legal title in him.

When the recital in a deed of the payment of the purchase money does not show by whom it was made, the presumption, in the absence of evidence to contrary, is that it was paid by the grantee. This presumption can only obtain as to the cash payment of $500. As to it the extraneous evidence shows that it was handed the agent of the grantors by J. B. Atwell, but, as such evidence also showed that it was appellant's money, and that his brother only acted as his agent in paying it, we do not think the mere fact that it was handed by J. B. to the grantor's agent is sufficient to overcome the presumption that the cash payment was made by appellant. It was said by Mr. Justice Gaines, in Howard v. Zimpleman: "It is against the policy of the law that a written instrument should be shown by parol testimony to have an effect different from that which its terms impart, except upon very strong proof"; and that, "in a case like the present, it would be proper to instruct the jury as to the legal effect of the conveyance, and that the parties to it are presumed in the first place to have intended that it should have that effect, but that they should find that a trust was intended, provided the other evidence be sufficient to overcome that presumption and to reasonably satisfy them that such was in fact the intention." Baylor v. Hopf, supra. As to such interest in the land as is represented by the $500 recited as a cash payment, we do not believe the evidence is sufficient to overcome the legal import of the conveyance, and to reasonably satisfy any one that as to that much of it a trust resulted in favor of J. B. Atwell under whom appellee claims title; and, for that reason, we think the court erred in not granting a new trial.

The part of the charge complained of in the ninth assignment of error is an enunciation of the elementary principle stated in the first sentence in our quotation from sec. 1037, Pomeroy's Equity Jurisprudence, and, as an abstract proposition, cannot be questioned. In the next paragraph of the charge, which is covered by the tenth assignment, the court, in endeavoring to apply the principle to the evidence in this case, tells the jury, that if they believe from it, J. B. Atwell purchased the land from the Heffingtons, and paid $500 in cash out of his own money, and gave his note for the balance of the purchase money, and afterwards paid the note out of the money borrowed from appellee, it would be their duty to find for the defendant; and, in the succeeding paragraph, that if they believed J. B. purchased the property for appellant, took the deed in his name, paid $500 in cash with money furnished by J. D. Atwell, gave

his note in payment for the balance of the purchase money, and, if J. B. afterwards fraudulently procured a loan of $2000 from appellee by representing to his agents that he was the owner of the land, and, out of the money thus procured, paid the purchase money note, the appellant would be entitled to recover only so much of the land as the money paid by him bore to the entire consideration paid, and appellee would be entitled to such portion of the land as the purchase money furnished by him bore to the whole of the purchase money.

We do not believe the evidence was sufficient to submit the issue as to whether the $500 cash payment expressed in the deed was paid with appellee's money, the presumption from the deed being that it was his, and all the parol evidence being to the same effect. The other part of the charge quoted eliminated entirely the question raised by the evidence, as to whether or not the note for the deferred payment was made by J. B. because his brother was a minor, without the intention of the maker's having any beneficial interest in the premises, and with the intention that the title to the equitable as well as the legal estate should vest in the grantee. J. B. did not owe the appellee anything at the time, and if he wished to contract to pay a part of the purchase money on land intended for the appellant, it was no business of and did not concern the appellee. Besides, there is testimony which is uncontradicted tending to show that J. B. was paid by the appellant the value of the note in pursuance of an agreement between them. This is not the only defect in the charge. Regardless of the facts that the note may have been made with the intention that the land should belong to the appellant, and the maker may have been fully compensated by the grantee for its payment, a question of fraud is injected, without evidence tending to connect appellant with or show he had knowledge of it, and the jury are told that if money was fraudulently procured by J. B. from appellee with which the note was paid, the appellee would, ipso facto, be entitled to such interest in the land as was represented by the money paid in settlement of the note. This cannot be the law. It was not contended that appellee paid and took up the note, and thereby became subrogated to the rights of the payee, and, being in possession of land upon which he had a vendor's lien, could not be ousted of it until the lien was discharged by appellant. Without passing upon such question, we will say that we doubt whether the facts before us are such as to show that appellee is subrogated to the rights of the payees of the note made by J. B. Atwell.

It is unnecessary to protract the discussion of the questions in the case. The errors indicated require a reversal of the judgment.

*Reversed and remanded.*