DEWEES et al. v. NICHOLSON et al.*
(No. 5561.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 5, 1916. Rehearing Denied Feb. 2, 1916.)

1. TRESPASS TO TRY TITLE ⊗═38 — EQUITABLE TITLE—BURDEN OF PROOF.

Where plaintiffs in trespass to try title were asserting an equitable title which they contended was acquired on account of transactions with a defendant who had conveyed the legal title to other defendants, the burden was on plaintiffs not only to prove such equitable title, but also that the first defendant's grantees had notice thereof, or that they did not pay value for the land bought by them.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. ⊗═38.]

2. EVIDENCE ⊗═589—WEIGHT—TESTIMONY OF PARTY.

In trespass to try title the unsupported testimony of a defendant alone was legally sufficient to sustain a verdict that the tract of land involved, part of a larger tract conveyed to defendant and by him, with the exception of the tract in litigation, conveyed to plaintiffs, did not belong, by way of a trust agreement, to plaintiffs under their agreement with defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. ⊗═589.]

3. TRESPASS TO TRY TITLE ⊗═41—INTENTION OF PARTIES TO CONTRACT—SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence held sufficient to warrant a finding that a defendant and plaintiffs never intended that the 217-acre tract involved, part of a larger one conveyed to defendant, be turned over to a land corporation in which he and plaintiffs owned stock.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ⊗═41.]

4. VENDOR AND PURCHASER ⊗═239—RIGHT OF BONA FIDE PURCHASER.

Parties who purchased tracts of land from the owner of the legal title as shown of record without notice, actual or constructive, of the claim thereto of a land corporation or that of stockholders therein, paying the full and fair value thereof, could hold the land against the stockholders of such corporation, plaintiffs in trespass to try title, claiming equitably in their own right under contract with a defendant, another stockholder, or as successors to the assets of the corporation to which defendant had agreed to convey.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. ⊗═239.]

5. VENDOR AND PURCHASER ⊗═239—ASSUMPTION OF PAYMENT OF PRICE—PARTIES BENEFITED.

Where corporate stockholders assumed payment of the price of land bought for the corporation, such assumption inured to the benefit of purchasers of a part of the land, which, by agreement with the corporation and stockholders, the selling stockholder, in whose name title to the land had been taken for the benefit of the corporation, was to own individually.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. ⊗═239.]

6. VENDOR AND PURCHASER ⊗═239 — BONA FIDE PURCHASERS—RIGHTS.

Where, with the assent of stockholders in a land company, title to land purchased for it was taken in the name of one, the other stockholders assuming payment of the price, such others could not recover the price per acre, the payment of which they had assumed, from innocent purchasers for value from the stockholder holding the legal title, but only seek to prevent such stockholder who sold wrongfully from transferring such purchase-money notes as he still owned, asking a judgment declaring themselves the owners.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. ⊗═239.]

7. APPEAL AND ERROR ⊗═759 — BRIEFS — ASSIGNMENTS OF ERROR.

Where the rule requiring assignments of error to be copied in the brief is violated to such an extent that a new assignment of error has been created, the one in the brief complaining of the admission of certain testimony of a witness, while the assignment in the motion for new trial complains of the admission of all his testimony, such assignment in the brief will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. ⊗═759.]

8. COSTS ⊗═32—PROPRIETY OF AWARD.

In trespass to try title, where the only relief given plaintiffs was the cancellation of a vendor's lien retained in the deed from a defendant to plaintiffs, which relief was not prayed for, and the defendant not aware that it was demanded or desired, the only issue submitted being decided for him by the jury, and plaintiff not requesting the submission of others, the adjudging of costs against the defendant was erroneous.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. ⊗═32.]

Appeal from District Court, La Salle County; J. F. Mullally, Judge.

Action in trespass to try title by S. R. Walker and another against W. I. Nicholson and another, in which A. T. Galloway and another intervened. From a judgment for defendant O'Callaghan and the interveners for the land, that plaintiffs take nothing on their prayers against the named defendant, and that the vendor's lien retained by the named defendant against the named plaintiff be canceled, plaintiffs appeal. Judgment reformed and affirmed.

Mangum & Townsend and Marshall Hicks, all of San Antonio, for appellants. Covey C. Thomas, of Cotulla, for appellees.

MOURSUND, J. This is an action in trespass to try title, instituted by S. R. Walker and O. S. Dewees, suing in their own right

---

and for the use and benefit of the Nicholson Immigration Company, a private corporation, and as assignees of the same, seeking to recover 217 acres of land in La Salle county, described in the petition by metes and bounds. The suit was originally against W. I. Nicholson and E. E. O'Callaghan, but A. T. Galloway and A. J. Nichols intervened, each claiming a portion of said land, and in the amended petition plaintiffs sought to recover the land from all of said parties. In addition to the formal allegations plaintiffs alleged that said land, with other tracts, was conveyed by F. C. Davis, about August 15, 1908, to W. I. Nicholson, but that Nicholson paid nothing for the same; that the title was taken by him in trust for plaintiffs, and in trust for a corporation to be formed by Nicholson and plaintiffs, which should sell the lands; that it was agreed that all money derived from such sales over and above the expenses was to be paid to Davis in discharge of the vendor's lien notes given by Nicholson, and then to the payment of $5,000 advanced and paid on the purchase price of said land by plaintiff Dewees and $2,500 advanced and paid on same by plaintiff Walker, and the sum of $20 for each lot donated by said company to be paid to said Nicholson, and after the payment of all of said sums the remaining land was to be owned by such corporation; that plaintiffs paid $5,000 on the purchase price of said 8,220 acres of land conveyed by Davis at the time the deed was made, and have since paid about $20,000, and Nicholson has never paid anything; that about November 3, 1908, Nicholson, to protect the land from being subject to payment of his debts, executed a deed to plaintiff Walker conveying all of said 8,220 acres except the 217 acres in controversy, and then and there represented to Walker and led him to believe that said deed would, and did, convey to him all the land conveyed to Nicholson by Davis, and recited the same consideration as was provided to be paid by him to Davis; that Nicholson, without delivering the deed to Walker, sent it to Cotulla to be recorded, and after it was recorded it was mailed to Walker, who, believing that it conveyed to him the entire 8,220 acres, without reading it, deposited it in a bank, and he and Dewees paid about $10,000 on the purchase price of the land; that some time afterwards Walker discovered that the deed did not include the 217 acres in controversy, whereupon he demanded that Nicholson convey said land to him, but Nicholson refused to do so. Plaintiffs alleged that such tract was omitted by mistake, but, if wrong in this, then that Nicholson intentionally made said omission and false representations and promises to deceive and defraud plaintiffs, and that they were deceived thereby, and Walker was induced to assume said obligations, and plaintiffs were induced to pay said money; that it was agreed between Walker and Nicholson that, in consideration of his taking a deed for all the land conveyed by Davis, Walker should agree to pay all the remainder of the debt due against the land; that about April 14, 1909, Nicholson released to plaintiffs all interest he had in the land in controversy; that at the time interveners received their deeds from Nicholson they had notice of plaintiffs' claim of ownership of said land. Plaintiffs alleged further that there is a vendor's lien on said land held by Davis amounting to $10 per acre retained in said deed to Nicholson, of which interveners have always had notice; that, although the deed from Nicholson to Walker recites that a note for $77,200 was given by Walker as part of the consideration, in fact no such note was given.

Plaintiffs prayed that they recover the land in controversy, and that the deed from Nicholson to Walker be reformed so as to include said land, and in the alternative for the establishment of the lien against said land to the extent of $10 per acre and interest.

Nicholson alleged that he had sold and conveyed 81.51 acres of land to E. E. O'Callaghan, 72 acres to A. T. Galloway, and 60 acres to A. J. Nichols prior to the institution of the suit, and for valuable considerations. As to the remainder, if any, he answered by plea of not guilty, general and special denials, and alleged that it was understood and agreed that the 217 acres was not to be included in the deed to Walker, but was more than offset by 226 acres overplus in the tracts conveyed to Walker; that it was agreed, in consideration of the conveyance made by him to Walker, plaintiffs would assume and pay all indebtedness to Davis, and thereby Nicholson would receive a release of the vendor's lien held by Davis on said 217 acres.

O'Callaghan answered, claiming 81.51 acres of the land sued for, described in his answer, and as to same he answered by plea of not guilty, and by a special plea to the effect that he had, on October 22, 1907, contracted with Nicholson for the purchase of said land, and paid $150 on the purchase price thereof, and by deed dated August 20, 1908, Nicholson had conveyed such land to him for a consideration of $1,620, all of which was paid before the institution of this suit; that during all of such time the records of La Salle county showed the fee-simple title to said land to be in Nicholson, and showed no claim of plaintiffs or of any other person except the vendor's lien in favor of F. C. Davis, which would be released upon the payment of $10 for each acre sought to be released; that the contract was made, the deed delivered, and the payments made in good faith, without any notice, actual or constructive, of any claim by plaintiffs or either of them; that, when Nicholson made the conveyance to Walker, plaintiffs assumed the payment of the entire sum due Davis; and this defendant, in making his payments to Nicholson, relied upon the agreement of plaintiffs to

pay said sum to Davis. Said defendant by cross-action sought affirmative relief, and prayed that the title to the 81.51 acres of land be quieted in him.

The interveners' (Galloway and Nichols') pleadings are the same, in substance, as those of O'Callaghan, except that they alleged that they purchased the tracts of land claimed by them long prior to the institution of the suit, without stating the date; that Galloway agreed to pay $1,200, all of which was paid prior to the filing of the suit, except two notes for $267 each, and that Nichols agreed to pay $1,254.55, all of which had been paid, except a note for $327.27; that all of said notes had been sold by Nicholson to bona fide purchasers for a valuable consideration before the maturity thereof. The interveners and defendants joined in a trial amendment in which the defensive matter pleaded by Nicholson was alleged more in detail.

The case was submitted upon only one special issue, as follows:

"Did Nicholson tell Walker and Dewees, or either of them, before the deed made by F. C. Davis to W. I. Nicholson, dated August 15, 1908, was taken, that they would have no interest in the 217 acres in controversy in this suit, and being the second tract described in said deed?"

The jury answered: "Yes." Judgment was entered in favor of O'Callaghan, Galloway, and Nichols for the tracts of land claimed by them; that said parties take nothing on their prayers against Nicholson; that the vendor's lien retained in the deed from Nicholson to Walker be canceled; and that plaintiffs recover of Nicholson all costs. The plaintiffs appealed.

Joseph Cotulla conveyed a large body of land to F. C. Davis. During the years 1907 and 1908 Nicholson was in possession of such land, selling portions thereof for Davis. Nichols and O'Callaghan visited the land in 1907, saw Nicholson in possession thereof, and were informed by the county clerk that Nicholson was selling it for Davis. Galloway was also informed as to this. Nichols and O'Callaghan during the year 1907 made a written contract with Nicholson for the purchase of the tracts claimed by them, and made a small payment thereon. At about the same time Galloway contracted to buy 80 acres, and made a small payment thereon, and afterwards, in the summer or fall of 1908, exchanged same for the tract now claimed by him. By deed dated August 15, 1908, filed for record September 10, 1908, and duly recorded, Davis conveyed to Nicholson certain lands described as 8,220 acres, more or less, the second tract being the 217 acres in controversy, for a consideration of $10 per acre, of which $5,000 was paid, and the remainder, $77,200, evidenced by a vendor's lien note payable to Davis and signed by Nicholson.

The statement of facts contains an instrument dated September 4, 1908, purporting to be a contract between Nicholson and the Nicholson Immigration Company, a corporation, but in fact not signed by said corporation, but signed and acknowledged by Dewees and Walker. This instrument recites that Nicholson owns 8,000 acres of land, more or less, in La Salle county, being a part of the Joseph Cotulla ranch, and particularly described in a deed from F. C. Davis to Nicholson dated the 15th day of August, 1908, and provides that the corporation shall take charge of, subdivide, and sell the land, and apply the proceeds as therein directed, and provides, further, that Nicholson will make deeds to purchasers, etc. This instrument was never recorded. The Nicholson Immigration Company was incorporated with a paid-up capital of $7,500, which was represented by the $5,000 put in on the land, and $2,500 more that Dewees put up for expense money. Nicholson, Walker, and Dewees were the sole stockholders. Nicholson effected the sale of a half interest in 458 acres of the land at a profit of $40 per acre, and sold other lands at a profit, in the benefits of all of which Dewees and Walker participated. By deed dated November 5, 1908, and filed for record the following day, Nicholson conveyed to Walker all of the land conveyed to him by Davis, except the 217 acres in controversy, which was entirely omitted, the tracts being numbered in each deed, and there being 15 tracts mentioned in the deed from Davis to Nicholson, and only 14 in the deed from Nicholson to Walker, the consideration being described as $5,000 cash, and a vendor's lien note in the sum of $77,200, payable at the same time as the note to Davis, and calling for the same rate of interest. At the time Nicholson made the deed to Walker he stated, according to Walker's testimony, that he had become involved in litigation in Oklahoma, and for the protection of Dewees and Walker he thought it best to put the title in the name of one of them. Nicholson testified that he made the conveyance at Walker's solicitation. The deed was written by the stenographer who did the writing for Nicholson, Walker, and Dewees, who used the same offices, and sent by Nicholson to the county clerk for recording, with instructions to mail it back to Walker. Walker received the deed, read it, and put it in his lock box, and testified that he first discovered the omission of the 217 acres about 7 or 8 months afterwards, whereupon he sent a new deed to Nicholson, who refused to sign, giving as his reason his version of the agreement between himself and Dewees and Walker.

On April 14, 1909, Nicholson, Walker, and Dewees entered into an agreement for the purpose of dissolving the corporation and canceling the contract dated September 4, 1908. This agreement provides that Walker and Dewees are to take over and own one half of 458 acres, of which the other half was conveyed to Dewees by Walker, and

they were to receive certain notes and assume certain obligations; that Nicholson is to pay Dewees and Walker within 60 days $8,750, and upon such payment all other assets and property belonging to the corporation "by virtue of said partnership contract" shall belong to Nicholson, and Walker will deed to Nicholson said assets and property with the understanding that the conveyance is to be subject to vendor's lien notes against the property aggregating $72,343.44; that the deeds to be executed by Walker "to the said 7,784 acres of land, more or less," shall be for such consideration as shall be named by Nicholson; that, if Nicholson fails to comply with such terms within 60 days, all right, title, and claim held by him in the Nicholson Immigration Company or the stock thereof, or growing out of the contract for the sale of the land, is to be at once forfeited by him to Walker and Dewees, and they are to release him from all claims held by them against him. This instrument was never recorded.

By deed dated August 20, 1908, filed for record February 5, 1909, Nicholson conveyed to O'Callaghan the 81.51 acres claimed by the latter for the sum of $550 cash and two notes for $540 each, which notes were paid before the filing of this suit. By deed dated October 29, 1908, filed for record February 4, 1910, Nicholson sold Galloway the 72 acres claimed by him for $1,200, of which $666 had been paid before this suit was filed. By deed dated April 21, 1909, filed for record March 12, 1910, Nicholson conveyed to Nichols the 60 acres claimed by him for $600 cash and two notes aggregating $654.45, both of which were unpaid at the time he was notified of the claim of Walker and Dewees. O'Callaghan, Nichols, and Galloway are, and have been for many years past, residents of the state of Mississippi. They honestly believed that the title to the land was good when they bought. The price paid by each for the land conveyed to him was a full, fair, and adequate consideration for the same, and at the time each secured his deed the land conveyed therein, so far as was shown by the records, was owned by Nicholson, and neither of them had any notice that Dewees and Walker, or either of them, claimed any interest in the land in controversy until the summer or fall of 1909. Walker did not execute any note to Nicholson as stated in the deed to him, but it was agreed and understood that he was assuming, along with Dewees, the payment of the note to Davis. The $5,000 cash paid to Davis was furnished by Dewees and Walker, and an agreement was made that the deed should be made to Nicholson, but the testimony conflicts in regard to the terms of their agreement. Nicholson testified that he was very explicit to explain to Walker that he was buying no interest in the land that was contracted for sale (meaning the 217 acres in controversy); that he counted in the excess of 226 acres, and explained fully to Walker that this excess was in the Rock Water Hole pasture, and that Walker thoroughly understood that he would have nothing to do with the land in survey No. 4, which is the land in question; that in making the trade with Walker and Dewees he laid the map down in front of them and explained that a certain 80 acres had been sold out of 14, and showed that the tract of 77 acres in No. 4 had not been sold, and explained fully to Mr. Walker that he would make a trade and exchange this 77-acre tract in No. 4 for the 80-acre tract in No. 14, and would leave No. 14 in such shape that it would cut in 20-acre tracts; that the deed from Davis, while it stated that it conveyed 8,220 acres, actually conveyed 8,446 acres. Nicholson testified further that it was not the intention in the agreement of September 4, 1908, to describe the land conveyed from Davis to Nicholson. Walker testified that he and Dewees paid off the balance due on the $77,200 note to Davis. It was admitted that Walker and Dewees assumed the payment thereof when the Nicholson Immigration Company was dissolved about June, 1909. Nicholson's testimony was contradicted by Walker and Dewees, who denied that he ever made any statements to them about the 217 acres being contracted to be sold or being excepted from the trade between them and Nicholson.

Appellant contends that Nicholson testified to an express trust, and that his testimony was in his own interest and uncorroborated, and therefore insufficient to sustain the finding of the jury. As we understand the pleadings, appellants sought to establish a trust in the 217 acres they sued for, while Nicholson and his vendees contended that plaintiffs had no interest in or title to such land. The evidence shows that there was an agreement between appellants and Nicholson by which a deed was to be taken in his name, and a corporation was to be formed for the sale of lands, the profits to be equally divided between Walker, Dewees, and Nicholson after paying the money advanced by Walker and Nicholson. There is, however, a material conflict upon the terms of this agreement; for Nicholson contends that the 217 acres in controversy which he had contracted to sell before the deed was made to him was not to be included in the lands to be sold by the corporation, but was to be his individual property. Walker and Dewees contend that the agreement was to the effect that all of the land conveyed to Nicholson was to be sold by the corporation and the proceeds divided. The legal title was vested in Nicholson, and the 217 acres in controversy was never conveyed to Walker with the remaining lands, but was conveyed by him to O'Callaghan, Nichols, and Galloway. Said parties at the time of the trial held the legal title to the lands respectively claimed by them.

[1, 2] As plaintiffs were attempting to as-

sert an equitable title which they contended was acquired on account of certain transactions with Nicholson, who had conveyed the legal title to O'Callaghan, Galloway, and Nichols, the burden was upon plaintiffs to not only prove such equitable title, but also that Nicholson's grantees had notice of such title, or that they did not pay value for the land bought by them. Hill v. Moore, 62 Tex. 612; Atwell v. Watkins, 13 Tex. Civ. App. 668, 36 S. W. 103; Oaks v. West, 64 S. W. 1033; Turner v. Cochran, 63 S. W. 155. The only issue submitted was not an affirmative submission of the issue made by plaintiff's pleadings, but was a submission of Nicholson's theory. The burden of proof was placed on the wrong party, but the affirmative answer amounted to an express finding against plaintiffs' theory; for, if the fact found was true, Nicholson's version of the transaction was correct, and plaintiffs' version incorrect. The jury found, in effect, that the trust agreement did not extend to the 217 acres of land, and that such land was to belong to Nicholson. The testimony of Nicholson fully supports such finding, and no rule of law is applicable which would have the effect of making his unsupported testimony insufficient to sustain the verdict.

[3] Appellants by their third and fourth assignments contend that a verdict should have been instructed for appellants; the contention being that by the contract dated September 4, 1908, the land in controversy was turned over to the corporation for sale and to pay the amounts due Davis, and by the terms of the agreement of April 14, 1909, and the failure of Nicholson to comply with the option given him therein, said land became the property of plaintiffs. The contract of September 4, 1908, does not purport to transfer title to the corporation, and is of no importance, unless it serves to throw light on the original transaction. The description of the lands therein is not as satisfactory as it might be; for it calls for 8,000 acres more or less, while the deed from Davis describes the land therein conveyed as 8,220 acres, more or less, and said contract does not contain the statement that the lands to be sold comprise all those tracts described in the deed from Davis, but the statement is made that such 8,000 acres, more or less, are described in the Davis deed. Nicholson testified that it was not intended in said agreement to describe the land as that conveyed from Davis to Nicholson; that he was so well satisfied that Walker and Dewees knew just what land they were getting, and there would be no hitch in any of the transactions, that he might have been a little careless. We think the description was sufficiently ambiguous to authorize proof of what was meant thereby, and that, in connection with the testimony showing that Nichols had theretofore contracted to sell the 217 acres in controversy, the jury was warranted in deciding that it was never intended to be turned over to the corporation, and that said contract should not be construed as inconsistent with Nicholson's testimony. If the land in controversy was not included in the contract, it is evident that the agreement of April 14, 1909, did not relate thereto; for it mentions only the assets and property belonging to the corporation by virtue of the contract. The property referred to as held under the contract was treated as the same held by Walker under the deed to him, for it is provided that he shall make the conveyance if Nicholson complies with the terms of the last contract.

[4] But, aside from the fact that the evidence sustains findings to the effect that Nicholson did not agree to hold the 217 acres in trust for plaintiffs, or for the corporation, whose assets and property plaintiffs acquired by virtue of the agreement of April 14, 1909, and that no title was conveyed to the corporation or to plaintiffs by the written instruments relied upon in the assignments of error, there is a good reason disclosed by the record why the court should have refused to give a peremptory instruction for plaintiffs. This reason is that O'Callaghan, Galloway, and Nichols purchased the respective tracts of land claimed by them from the owner of the legal title, as shown of record, without any notice, actual or constructive, of plaintiffs' or the corporation's claim thereto, and paid the full and fair value thereof. This proof was so complete that it would have met the requirements of the law to entitle them to hold their land, had plaintiffs shown a legal title antedating theirs, in which case the burden would have been upon them to establish their good faith, etc.

[5, 6] By the fifth assignment appellants contend that judgment should have been entered that plaintiffs recover from O'Callaghan, Galloway, and Nichols the sum of $10 per acre for each acre of the land claimed by them, and for foreclosure of lien, because plaintiffs paid off the vendor's lien retained by Davis. If the transaction was as contended by Nicholson, and found by the jury, Walker and Dewees got what they were to receive, and it is admitted that they assumed the payment of the amount due Davis. This assumption would inure to the benefit of O'Callaghan, Galloway, and Nichols. Had the jury found in favor of their contention, they would still be confronted with the fact that their act in vesting title in Nicholson caused the purchasers from Nicholson to obligate themselves to pay full value, and justice would require that they should not be permitted to recover $10 per acre from such purchasers, but should have their recourse against their trustee, Nicholson, and should seek to stop the transfer of such notes as he still owned, and ask for a judgment declaring them the owners thereof. This was not undertaken. The assignment is overruled.

[7] The sixth assignment will not be considered, because the rule requiring the as-

signments to be copied in the brief has been violated to such an extent that a new assignment of error has been created. The one in the brief complains of the admission of certain testimony of Nicholson, which, by the way, is shown by the statement of facts to have been read as offered by appellants, while the assignment in the motion for new trial complains of the admission of all the testimony given by Nicholson.

[8] By cross-assignment complaint is made by Nicholson because the court adjudged the costs against him. As the only issue submitted was decided in his favor by the jury, and plaintiffs did not request that any others be submitted, he contends the costs should not have been adjudged against him. The only relief given the plaintiffs was the cancellation of the vendor's lien retained in the deed from Nicholson to Walker. This relief was not prayed for, and Nicholson was not apprised of the fact that such relief was demanded or desired, or he could have tendered an instrument correcting the mistake. We think the court erred in adjudging the costs against Nicholson.

The other cross-assignments are based on proceedings not shown in the record, and would have to be overruled were it necessary to consider them.

The judgment is reformed so as to provide that plaintiffs pay all costs, and, as so reformed, will be affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.